## R. P. BYRD ET AL. v. MARY COLLINS ET AL.

(Filed 23 October, 1912.)

**1. Wills, Lost or Stolen—Evidence of Loss—Diligent Search.**

Before proving by parol the contents of a will alleged to have been lost or stolen, it is necessary to show that diligent search has been made in places where there is a possibility it could be found; and in this case, evidence is held insufficient, that the testator had declared he had made a will, deposited it in a certain secret place, and that he has missed it therefrom after certain persons had access to the room wherein it had been deposited, without showing inquiry of any other persons except one of the witnesses to the will, who testified on the trial.

**2. Same—Questions of Law.**

The sufficiency of the search for a will alleged to have been lost or stolen, to admit of parol evidence of its contents, is a matter of law for the court, depending upon the peculiar circumstances of each case.

APPEAL by plaintiff from *Peebles, J.,* at April Term, 1912, of ROBESON.

This was a proceeding for the partition of certain lands, the petitioners claiming an interest as heirs of Effie Ann Stone. The defendants pleaded sole seizin, alleging that the said Effie Ann Stone made a will devising the land to the defendant J. H. Byrd, and that this will had been lost, or destroyed by some one other than the testatrix.

By consent of all parties, the trial of the partition proceeding was suspended until the defendant could go before the clerk and probate the alleged will. The clerk refused to admit the alleged lost will to probate, and the propounder appealed to the Superior Court, where issues were submitted to the jury as to the execution of the alleged will and its contents and as to whether it had been revoked by the testatrix.

It was in evidence by one of the subscribing witnesses to the will that it had been duly executed as prescribed by law. The other subscribing witness did not testify, and his absence was not accounted for.

The same witness who testified as to the execution of the will also testified as to its contents, and there was no other proof as to the contents.

159—41

There was no evidence that any search had been made for the will since the death of the testatrix.

The evidence as to the 'loss of the will was as follows: "After that she told me that the will was stolen. I was going by her house and she called to me, and she was right near the road, and told me that her will was stolen; and I asked her when it was stolen, and she started to tell me, and one of her nieces who was with her, a girl, came up, and she stopped talking to me, and she said she didn't want everybody to hear her business, and she said she would come to my house and see me. This might have been six or eight months or a year before she died. She came to my house and told me that her will was taken out of the meat-room. She said she put it in there, in an old coffee-pot. She said the reason she put it in the coffee-pot in her meat-house was because they like to broke in her trunk when she was about to die, and she said after then she put it in her coffee-pot, where she thought nobody would get it; and she said she had John Bams, J. W. Bullock, and Will Bullock to kill her hogs, and said they salted the meat down and put it in her meat-room, and right away she missed her will. After that meat was put in there, she said, a night or two before the will was taken, there was a mighty lambering around the house. Somebody around there was making a noise and all those things, and she said she told them about it, and they told her it was her sister Betsy had come back; and she said when they got the will she heard no more of her sister Betsy; and I asked her who she thought got her will, and she said she thought it was Jim Byrd got it, the one she give her property to. That was what she said. She told him that she had put that will in that room, so if she died that he would know where it was. That was just what she said when she told me these things. She said she didn't know what to do about it. I told her she could make another will or deed to give it to whoever she wanted to. She said if she made another will somebody would take it, and she said she believed her old will would come up, because she said it was when these men put this meat in there she missed her will."

There was other evidence, on behalf of the propounders, of declarations of Effie Ann Stone, to the effect that she had made a will and it had been stolen.

There was no evidence of any inquiry being made of any one for the will.

At the conclusion of the evidence his Honor withdrew all of the evidence as to the contents of the will, because, in his opinion, there was not sufficient evidence of its loss, and the propounders excepted.

The jury answered the issues in favor of the caveators, and from the judgment rendered thereon the propounders appealed.

*McNeill & McNeill for plaintiffs.*
*E. J. Britt and McIntyre, Lawrence & Proctor for defendants.*

ALLEN, J. There are several exceptions in the record, but all of them are immaterial, if his Honor ruled correctly in excluding the evidence as to the contents of the lost will, as we think he did.

The testatrix may have been mistaken as to the place where she deposited the will, or, if she was not, and it was taken on the day of the hog killing by one of the three persons who went in the meat-room, it may still be in existence, and there was no evidence of any search of her premises or among her effects or of the premises or effects of either of the three persons, nor was John Bams or J. W. Bullock, two of them, examined as a witness.

The authorities are all to the effect that before parol evidence can be offered to prove the contents of a paper, it must be shown that the most diligent search has been made for the alleged missing instrument.

In *Eure v. Pitman,* 10 N. C., 371, it was said: "To entitle a party to give parol evidence of the contents of a will alleged to be destroyed, where there is not sufficient evidence to warrant the conclusion of its absolute destruction, the party must show that he has made diligent search and inquiry after the will in those places where it would most probably be found if in existence." To the same effect, *Scoggins v. Turner,* 98 N. C., 135.

In 3 Redfield on Wills, page 15: "But it must in all cases be shown that an exhaustive search has been made for such missing will in all places where there is the remotest possibility that it could be found, before any secondary evidence can be received of its contents."

The question here presented was fully considered and the authorities reviewed in *Avery v. Stewart,* 134 N. C., 291. It was held in that case to be error to admit parol evidence of the contents of a paper when a witness had testified, "It is lost. I cannot find it," which is stronger than the evidence in this case, and the Court then applied the rule that, "If the instrument is lost, the party is required to give some evidence that such a paper once existed, though slight evidence is sufficient for this purpose, and that a *bona fide* and diligent search has been unsuccessfully made for it in the place where it was most likely to be found, if the nature of the case admits such proof. What degree of diligence in the search is necessary it is not easy to define, as each case depends much on its peculiar circumstances; and the question whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents is to be determined by the court and not by the jury. But it seems that in general the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him." 1 Greenleaf Ev., sec. 558 (16 Ed., sec. 563b).

We are of opinion, on the whole record, there is no error.

No error.