J. HOLT GARDNER, JESSE H. GARDNER, MELVIN H. GARDNER, DOUGLAS GARDNER, MRS. R. B. BYRD, MRS. R. A. HOLLAND, MRS. ROBT. WOODRUFF, MRS. R. P. ANDREWS, MRS. CARRIE A. GARD-NER, MRS. ALDINE EBERT; COPARTNERS, TRADING AS THE GARDNER COMPANY; WILLIAM McKEITHEN, AND MYRTLE WILLIAMS, v. C. J. McDONALD, SHERIFF OF MOORE COUNTY, AND THE BANK OF PINEHURST.

(Filed 10 November, 1943.)

**1. Execution § 16—**

While much has been written regarding sales of land under execution, each decision must be read and considered in the light of the facts of the case and of the common law or the then current statutory law.

**2. Same—**

The sheriff sells land by virtue of the power of a writ of *venditioni exponas* or execution, as the case may be, and, when the writ expires by limitation, the power of the sheriff to sell land under it comes to an end.

**3. Same—**

Where, as in this State, the rule of common law has been changed regarding the time at which an execution should be made returnable, the writ should be made returnable in accordance with the applicatory stat-ute; and, while a failure to follow the statute makes an execution irregu-lar, the life of it as fixed by the statute is not affected.

PETITION to rehear this case reported *ante.*

*Seawell & Seawell for plaintiffs, appellees.*
*W. D. Sabiston, Jr., for defendant, appellant.*

WINBORNE, J. On original appeal, one member of the Court not sitting, and the remaining six being evenly divided in opinion as to the correctness of the ruling of the court below holding valid the sale under an execution made returnable "not less than 40 nor more than 60 days from the date" thereof, on a date more than 60 days, but less than 90 days from the issuing of the execution, the ruling stood affirmed as to the disposition of the appeal without becoming a precedent. The case is brought back for the entire membership of the Court to consider the ruling of the court below.

The record discloses that in the trial court, the parties having waived jury trial and agreed for the court to find the facts and to render judg-ment thereon, the court found facts substantially these:

1. On 12 August, 1929, judgment was rendered in the Superior Court of Moore County in an action therein pending wherein Southern Security and Guaranty Company was plaintiff and Percy L. Gardner and another were defendants, in favor of plaintiff there and against defendants there,

and each of them, jointly and severally, in the sum of $2,000, with interest from a certain date, and judgment was duly and regularly recorded and docketed in the office of clerk of Superior Court of said county.

2. On 13 August, 1932, at request of Southern Security and Guaranty Company plaintiff in the action entitled as set forth in above paragraph, execution issued by the clerk of the Superior Court of Moore County, to the sheriff of Moore County, commanding him to satisfy said judgment out of the personal property of said Percy L. Gardner and his codefendant, within said county, or if sufficient personal property could not be found, then out of the real estate in said county belonging to said defendants on the day when said judgment was so docketed in said county, or at any time thereafter, concluding with these words: "and have you this execution, together with the money, before our said court, at the courthouse in Carthage, not less than 40 nor more than 60 days from the date hereof, and there to render the same to the said plaintiff." The authority as quoted is embraced in a printed form to which there were no additions, subtractions or substitutions made by the clerk.

3. Pursuant to execution above referred to the sheriff of Moore County, "after lawful advertisement as is prescribed by the statutes," and at the place designated, and on 7 November, 1932, offered for sale eight tracts of land, of which Percy L. Gardner, defendant in said judgment, was prior thereto the owner and in possession, when and where Mrs. Ruth W. Gardner became the purchaser at the price of $1,000, which she paid to the sheriff, who thereupon on said date executed and delivered to her a deed for all eight tracts of land—(the deed. reciting that two of the tracts were subject to a $3,000 mortgage deed of record). The sheriff "thereupon made the return of the execution as authorized to do as appears from the return found on the back of the execution." The deed from the sheriff to Mrs. Ruth W. Gardner was filed for registration in the office of Register of Deeds on 26 November, 1932, and actually recorded on 29 November, 1932.

4. After the sheriff delivered the deed to Mrs. Ruth W. Gardner she "immediately went into possession and has had control over said tracts of land to the exclusion of all other parties," and subsequent to the filing of her deed for registration and the actual recording of it, she has sold and conveyed certain tracts or portions of tracts of said land and the plaintiffs in this action, other than herself, hold same by *mesne* conveyances and are now in actual possession and have control thereof—she being possessed of those portions not sold.

5. On 26 December, 1932, after the sale under execution and delivery of the sheriff's deed to Mrs. Ruth W. Gardner as above stated, the Bank of Pinehurst obtained a judgment in the Superior Court of Moore

County against Percy L. Gardner, and another, in the sum of $1,950, with interest and cost, subject to certain credit, and same was duly docketed in the office of clerk of the Superior Court of said county.

6. In September, 1942, defendant Bank of Pinehurst, holder and owner of the judgment against Percy L. Gardner, dated 26 December, 1932, as above set forth, had the clerk of the Superior Court of Moore County issue an execution thereon to defendant sheriff of said county, by virtue of which said sheriff made levy upon, and advertised for sale all of the eight tracts embraced within the sheriff's deed to Mrs. Ruth W. Gardner dated 7 November, 1932, and by order of court the sale was enjoined pending hearing of the cause.

7. No question is involved for consideration or determination in this controversy as to homestead of Percy L. Gardner.

The court, upon these facts, concluded as matters of law (a) that the sale on 7 November, 1932, having been made within the period of not less than 40 nor more than 90 days after the issuing of execution, the execution was at that time good in law and the sheriff possessed full authority to sell thereunder, and the sale by him to Mrs. Ruth W. Gardner is valid, and (b) that the deed from the sheriff to Mrs. Ruth W. Gardner vested in her all the right, title and interest of Percy L. Gardner in and to the lands embraced in the deed.

Judgment was entered in accordance therewith and defendant Bank of Pinehurst, its agents, servants, and employees acting for it, were perpetually enjoined from enforcing the sale of said property under execution, from all of which the bank appealed to the Supreme Court, assigning error.

Upon careful review of the authorities, and consideration of pertinent statute, C. S., 672, as amended, we are of opinion that on this record the decision below is correct.

While through the long existence of this Court much has been written regarding sales of land under execution, each decision must be read and considered in the light of the facts of the case and of the common law or the then current statutory law. However, in all these decisions it appears to be a settled principle of law that the sheriff sells land by virtue of the power of a writ of *venditioni exponas* or execution, as the case may have been, and that when the writ expires by limitation the power of the sheriff to sell land under it comes to an end. In the light of this principle, what is the life of the execution?

The statute, C. S., 672, as amended by Public Laws 1927, chapter 110, and by Public Laws 1931, chapter 172, prescribes that "Executions shall be dated as of the day on which they were issued, and shall be returnable to the court from which they were issued not less than forty nor more than ninety days from said date." By this statute the Legislature has

fixed the life of an execution. It begins on the day of the issuance of the execution, and by limitation terminates ninety days from the date of it. It may not be returned in less than forty days but must be returned in ninety days. Hence, under this statute an execution should be made returnable "not less than forty nor more than ninety days" from its date. And while failure to follow the statute makes an execution irregular, the life of it as fixed by the statute is not affected.

It is stated in 33 C. J. S., 218, Execution, section 78, that, where as in this State the rule of common law has been changed regarding the time at which an execution should be made returnable, the writ should be made returnable in accordance with the applicatory statute; that when not made returnable at the proper time, generally such an execution is not void but voidable only; and that an execution ordinarily is not void when a return is directed within a period less than or greater than the period of time fixed by statute.

The case of *Jeffreys v. Hocutt,* 193 N. C., 332, 137 S. E., 177, and other cases cited and relied on by defendant Bank of Pinehurst, are clearly distinguishable in factual situation from the present case. There the executions had expired by statutory limitation and the sales were had thereafter. Verily, the executions, as characterized by *Taylor, C. J.,* in *Barden v. McKinne,* 11 N. C., 279, were "dead in law." What is said by the Court in those decisions must be read in the light of this fact. On the other hand, the sale in question in the present case was had within the statutory life of the execution.

But it is contended by the petitioner, Bank of Pinehurst, that an execution is the judgment creditor's process, and that, as a general rule, it is within his exclusive control, and that in the present case the creditor elected to have it returned in sixty rather than ninety days from date. If it be conceded that the creditor has such right, it would not affect the legality and efficacy of the execution in the hands of the sheriff for the period fixed by the statute, but would only affect the liability of the sheriff for failure to make earlier return. And, even so, who could complain that the sheriff failed to make return within such lesser period? Manifestly, only the judgment creditor. And in the present case the facts are that sheriff sold the land, collected the purchase price and made return to the court, from which, nothing else appearing, it will be presumed that the creditor acquiesced in the sale. Furthermore, if it be conceded that the judgment debtor had a right to object to sale as made, the facts are that prior to the date of sale the debtor was in possession of the land, and that immediately after the sale the purchaser at the sale went into and has since remained in possession, from which, nothing else appearing, it may be inferred that the debtor acquiesced in the sale and surrendered possession. Indeed, as defendant Bank of Pinehurst did

not obtain its judgment until more than a month had elapsed after the sale it was not a party in interest. And, so far as the record shows, it failed to take any steps to enforce its judgment until September, 1942, after the lien of the judgment under which the sale of 7 November, 1932, was made had expired, and at a time when right of purchaser at that sale to be placed *in statu quo* had likely been impaired.

The petition is
Dismissed.