BOARD OF EDUCATION OF THE STATE OF NORTH CAROLINA AND STATE OF NORTH CAROLINA, PLAINTIFFS, v. MARTHA W. GALLOP AND HUSBAND, EMANUEL GALLOP, JOSEPH WOODHOUSE AND WIFE, GLADYS WOODHOUSE, HELEN A. NORMAN AND HUSBAND, H. W. NORMAN, GEORGE J. SPENCE, TRUSTEE, AND S. T. COOPER, DEFENDANTS.

(Filed 17 September, 1947.)

**1. Execution § 22—**

Where sheriff's deed is attacked on the ground that it was not supported by a live execution in the sheriff's hands, such attack goes to the complete invalidity of the deed, and it is incumbent upon the party relying upon such deed as a link in his chain of title to prove, *dehors* the recitals in the deed, that it was executed pursuant to a sale under a live execution.

**2. Same—**

Sheriff's deed constituting a link in plaintiff's title was attacked on the ground that it was not supported by a live execution. Plaintiff introduced a purported "execution" signed by the clerk, but which did not have notation as to date of issue, G. S., 1-310, nor notation by the sheriff of the date received and the date of execution, G. S., 2-41, nor entry of any return on the judgment docket, G. S., 1-321. *Held:* The purported "execution" is insufficient as an original and is ineffectual if relied upon as a replica of an original execution which had been lost.

**3. Same—**

Recitals in sheriff's deed that it was executed pursuant to sale under live execution in his hands are only secondary evidence of such fact and cannot be admitted for that purpose until the loss or destruction of the original records is clearly proven to the satisfaction of the court.

599

BOARD OF EDUCATION *v.* GALLOP.

**4. Same: Execution § 6—**

Where sale is had after the maximum period allowed for return of the original execution, there can be no presumption that successive executions were issued in the absence of showing that the requisite fees were tendered the clerk, since the clerk is not bound to issue any execution unless the proper fees are tendered to him. G. S., 1-305.

**5. Same—**

Under C. S., 672, an execution sale had more than sixty days (now ninety days, G. S., 1-310) from date of issuance of execution is void.

PLAINTIFF's appeal from *Burgwyn, Special Judge,* at May Term, 1947, of PASQUOTANK.

The plaintiffs brought this action in ejectment against the defendants in possession, claiming title to the land in the State Board of Education and asking damages for its wrongful retention; and joined therein allegations that certain described deeds of trust were invalid, constituted a cloud on the title, and asked that they be removed from the county registry.

The defendants answered, admitting possession, denying plaintiffs' title, and claiming title in themselves; and in a further defense and counterclaim pleaded adverse possession under color of title for seven years, adverse possession for more than 21 years and more than 20 years, and for more than 30 years, prior to the commencement of the action, pleading the several statutes. They further attacked plaintiffs' source of title, alleging the same to be through a deed of Charles Carmine, Sheriff of Pasquotank County, to M. B. Simpson, and from Simpson and others through *mesne* conveyance to the plaintiff Board of Education. The invalidity of the sheriff's deed is alleged to rest in the fact that the sale was made without authority of law or valid execution in the hands of the sheriff. They demand that plaintiff's deeds be removed from the registry as constituting a cloud on defendants' title. Defendants further set up a claim based upon equitable estoppel, alleging that plaintiffs, having once attempted to exercise some dominion over the property, desisted because of defendants' notice of their ownership, and thereafter permitted several homes to be erected on the land without objection or protest, leading defendants to believe that their title or right of possession was fully recognized.

On the trial the plaintiffs introduced as part of its chain of title the aforesaid deed of Charles Carmine, Sheriff of Pasquotank County, to M. B. Simpson, dated 14 March, 1941, containing the following recitals:

"NORTH CAROLINA
PASQUOTANK COUNTY

"THIS DEED made and entered into this 14th day of March, 1931, by and between Charles Carmine, Sheriff of Pasquotank County,

of the first part, and M. B. Simpson of said County, of the second part, WITNESSETH:

"THAT WHEREAS, a certain writ of execution issued out of the Superior Court of said County in favor of M. B. Simpson, plaintiff, and against Joseph Woodhouse, defendant, commanding said Sheriff out of the personal property of the said Woodhouse within said County found, to satisfy the same, or in default thereof out of the real property of the said Judgment debtor, as by reference to said execution will more fully appear; and

"WHEREAS, because sufficient personal property of said judgment debtor to satisfy said execution in said County could not be found the said Sheriff did levy on, take and seize all the estate, right, title and interest of said judgment debtor of, in and to the real estate hereinafter described with the appurtenances, and did on the 2nd day of March, 1931, sell the said premises at auction at the Courthouse door in Elizabeth City, North Carolina, at 12 o'clock noon, after having advertised and given the notices according to law, at which sale the said Simpson became the last and highest bidder, therefor, at the price of FIVE HUNDRED DOLLARS."

The deed then conveys the land in controversy to Simpson, under whom the plaintiff Board of Education claims.

In support of the deed of Sheriff Carmine to Simpson the plaintiff offered F. D. Horner, Clerk of the Superior Court, who identified certain papers from the files of his office, containing the judgment roll, which plaintiff offered in evidence. Amongst them is the summons in the action of *Simpson v. Woodhouse,* verified complaint therein, and judgment; execution dated 18 December, 1930, and attached thereto memorandum of the Sheriff relating to the persons summoned to lay off homestead and levy made on the excess; appraisers' return showing the land included in the homestead and the adjacent land of defendant in execution, the latter being the same now in controversy. (The execution above listed is not the paper in controversy hereinafter mentioned, called during the trial "the second execution," dated 5 February, 1931.)

There follows a copy of notice of the March 2nd sale, dated 31 January, 1931, with notation on the back thereof by the Sheriff, "Sold to M. B. Simpson for $500"; and a newspaper clipping showing advertisement in an Elizabeth City newspaper.

The plaintiff then offered in evidence a paper writing from the same jacket, containing the judgment roll in the case of *Simpson v. Woodhouse,* together with the photostatic copies of the face and reverse thereof. The paper purports to be an execution, is dated 5 February, 1931, and requires execution and return on or before 2 April, 1931. The paper,

in form of an execution, bears no statement or endorsement that it had ever been issued, or received by the sheriff, and no return indicating it had been acted upon or of sale made thereunder.

Defendants objected on the ground that the paper had been previously stricken from the files by final court order upon motion of these defendants in the case of *Simpson v. Woodhouse* and no longer constituted a part of the judgment roll; and further because the affidavits and, especially, two orders relating to the purported execution, one by the Clerk, and one upon appeal by the trial judge now sitting at this hearing, striking the paper from the files, were not offered along with it as inseparably relevant matters of record. Pending argument the jury was excluded from the room and the defendants offered these affidavits and orders from the same jacket containing the judgment roll. The affidavits were those of the movents in the proceeding before the Clerk, including some of the present defendants, and supporting affidavits from other witnesses. In addition to that, further affidavits were read, and testimony was taken (in the absence of the jury) respecting the character of the paper offered as an execution, its former absence from the judgment roll, for the purpose of showing that it had made a recent appearance there. All of the affidavits made in the previous hearing except the item below mentioned, the affidavit of Robert L. Sessoms, were excluded, as well as the two orders striking the paper from the file. In excluding them His Honor made an order that they should be a part of the case on appeal, and they are a part of the record. However, they are not essential to the decision of the case and are omitted from this statement.

The judge did admit an affidavit of Robert L. Sessoms, Jr., manager of the Mitchell Printing Company of Raleigh, to the effect that he was familiar with the various legal forms printed and for sale by his company and that the paper in controversy was a form printed by that company. He further testified that this form was printed on or about 1 September, 1932. That this particular form of execution as printed bears the following on the inside of the paper at the fold: "Form 12— Execution Against Property—New Form—60282—Mitchell Printing Co."; that on the outside of such printed form as printed there appeared the following: "Form 12—60282—1M—9-1-32"; the latter date indicating when it was printed and put on sale; that the form bearing the aforesaid number was not in existence during the year 1931 and particularly during February, March and April. Prior forms carried a lower number.

Reference to the purported execution as offered shows that the date above referred to was pinched or torn off the paper but the publisher's number remained. The judge, having once declined to admit the paper, reconsidered and admitted it on the ground that the present plaintiff was

not a party to the motion which resulted in striking the paper from the files and was not bound thereby, admitting the paper in evidence, over the defendants' exception.

The following issues were submitted to the jury:

1. Are the plaintiffs the owners of the lands described in the complaint?
   Answer: No.
2. Have the defendants, and their predecessors in title, been in the adverse possession of the lands described in the complaint, under color of title, under known and visible lines and boundaries, continuously, for more than 7 years prior to the institution of this proceeding?
   Answer: Yes.
3. What amount, if anything, are the plaintiffs entitled to recover of the defendants?
   Answer: Nothing.

As to the first issue, the court charged the jury that if they believed the facts to be as testified to by the witnesses and as the record evidence in the case tended to show, they should answer the first issue "No"; and that if they believed the facts to be as the record evidence tended to show and as testified to by the witnesses, they would answer the second issue "Yes"; and that if the jury believed the facts to be as testified to by the witnesses and as the record tended to show, they would answer the third issue "Nothing." Similar directional instructions were given upon the issues relating to defendants' cross-action.

To these instructions the plaintiffs in apt time objected and excepted. The jury rendered a verdict in accordance with the instructions given them. The plaintiff moved to set aside the verdict and for a new trial for errors assigned or to be assigned in case on appeal. The motion was overruled and plaintiff excepted. Upon the signing of the ensuing judgment the plaintiff objected, excepted and appealed, assigning errors.

*Attorney-General McMullan for the State.*

*R. Clarence Dozier and Wilson & Wilson for plaintiff, appellant.*

*J. Henry LeRoy and Geo. J. Spence for defendants, appellees.*

SEAWELL, J. The deed of Sheriff Carmine to M. B. Simpson is a vital and necessary link in the plaintiff's title and its validity depends on a sale under a live execution in the hands of the sheriff as provided by law. It is incumbent upon the plaintiff offering such a deed when challenged in an action involving the title, to support it by evidence of these

facts. *Byrd v. Collins,* 159 N. C., 641, 75 S. E., 1073; *Avery v. Stewart,* 134 N. C., 287, 46 S. E., 519; *Isley v. Boon,* 109 N. C., 555, 13 S. E., 795; *Person v. Roberts,* 159 N. C., 168, 74 S. E., 322; *Sinclair v. Worthy,* 60 N. C., 114, 115; *Thompson v. Lumber Co.,* 168 N. C., 226, 84 S. E., 289. The continuous history of variations in early decisions will be found in 36 A. L. R., Anno., p. 1007 (*seq.*); however, the important case of *Thompson v. Lumber Co., supra,* is not listed.

The attack on plaintiff's proffered muniment of title, based on the want of such an execution, does not go to its irregularity but to its complete invalidity.

This case, then, hinges upon the legal effect of the so-called "second execution," the paper admitted after very extensive controversy, and virtually deprived of effect by the instructions given to the jury upon the issues determining the plaintiff's title to the lands.

The plaintiffs do not contend that this paper writing was in existence at all until after the sale of the land. They do contend that the court, and the jury, may draw from it the inference that it was written and signed by Aydlett, Clerk of the Superior Court, *ex mero motu,* to supply a formerly existing execution which had become lost, and that this was within his official power and discretion.

It seems to be agreed that the "second execution," as it has been called, was filled in in the handwriting of Mr. Aydlett and bears his proper signature. There is no evidence *dehors* the document itself as to whether he wrote it up *ex mero motu* or at the insistence of some other person; and there is no evidence *dehors* the paper that there was ever any such execution issued or lost which might be supplied either *ex mero motu* or otherwise by the clerk. In fact, the evidence, as far as it goes, is *contra.*

The evidence tends to show that there was no entry upon the records of the clerk as to its issue (G. S., 1-310), nor endorsement of the clerk on the day of its issue, none by the sheriff of the day he received it and the day of execution (G. S., 2-41), nor entry of any return on the judgment docket (G. S., 1-321), all of which were statutory requirements in force at the time of its alleged issue and return.

The paper which it is suggested is a substitute for a lost original, which original should have been thus charted through its course by the records, is not supported by any return upon it or accompanying it, or any of the notations which we have mentioned. It rivals the Flying Dutchman, sailing without a log—just coming out of the nowhere into the here. The evidence seems to disclose that it made its first appearance amongst the papers in the judgment roll very recently, and some 16 years after the sale.

If indeed the so-called "second execution" could be an exact replica of an original which was lost and which the clerk sought to replace, it falls far short of being a serviceable substitute. If we might conceive of this paper lying in the clerk's office in the judgment roll all this while as an original, none of the presumptions which the appellants desire to attach to it can be indulged. An execution is of no effect until its issue and delivery to the sheriff. *McKeithen v. Blue,* 149 N. C., 95, 62 S. E., 769, 128 Am. S. R., 654.

The law, as we have seen, has provided a method by which this important fact may be evidenced; there is no evidence *dehors* the record of the issue of the execution; and there is nothing in the challenged paper itself, supposing it to be a substitute, which would raise a presumption or inference of such issue. In other words, the document at last appearing raises no presumption that it was ever issued or acted upon.

It is now the settled law in this State that the recitals in a sheriff's deed other than those which pertain to some of his own acts, are only secondary evidence in so far as establishment of the existence of the judgment and the execution are concerned. *Thompson v. Lumber Co., supra:*

"The deed was introduced in evidence but the judicial proceedings were not produced, the sheriff relying upon the recitals in the deed to prove their existence and contents. It is well established that the recitals in a deed executed pursuant to a judicial decree, or by a sheriff upon an execution sale are evidence of the facts recited, but they are only secondary evidence and before being admitted for that purpose the loss or destruction of the original record must be clearly proven. *Isley v. Boon, supra; Person v. Roberts, supra.*"

In *Byrd v. Collins, supra,* the Court quoted with approval *Avery v. Stewart, supra;*

"If the instrument is lost, the party is required to give some evidence that such a paper once existed, though slight evidence is sufficient for this purpose; and that a *bona fide* and diligent search has been unsuccessfully made for it in the place where it was most likely to be found . . . the question whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents is to be determined by the court and not by the jury."

From *Person v. Roberts,* 159 N. C., 168, 74 S. E., 322, we quote:

"The act of issuing an execution is not that of the sheriff but of the clerk and can easily be proved by the execution itself, or in its absence, if lost, by the record. . . ."

Certainly, the recitals are neither conclusive nor effective against the record itself. *Powell v. Turpin,* 224 N. C., 67, 69, 70, 29 S. E. (2d), 26.

Appellants urge that a presumption of the issue of a prior execution was raised by G. S., 1-305, making it the duty of the clerk to issue successive executions within six weeks of the return date of the first, this on the principle that officers are supposed to have performed their duties. The force of this suggestion is somewhat blunted by the fact that the clerk is not bound to issue any execution at all unless the fees are tendered to him. *Bank v. Bobbitt,* 111 N. C., 194, 16 S. E., 169. There is no evidence that any such fees were paid or tendered.

The original execution issued in this case on 18 December, 1930, and now in the judgment roll, was no authority for the sheriff in making the sale and executing the deed. Under the law as it then existed, requiring return not less than 40 nor more than 60 days from the date of issue (C. S., 672) this execution was "dead in law." More than 70 days had expired when the sale was made. *Gardner v. McDonald, Sheriff,* 223 N. C., 555, 27 S. E. (2d), 522; *Jeffreys v. Hocutt,* 193 N. C., 332, 137 S. E., 177. A sale made under it would, therefore, be void.

We do not find it necessary to consider objections and exceptions to the instructions given by the court upon the issues relating to the defendants' title since the plaintiff must fail in the assertion of his own title. Error in the latter respect, if there is such, cannot be material to the result. In the record we find

No error.