J. C. SCOGGINS, Adm'r of Dicey Crabtree, and WILL CRABTREE
v. JOHN W. TURNER, REBECCA TURNER and ANTONIA
MEDLIN.

*Burden of Proof—Will—Presumption—Evidence.*

1. It being shown that a will was once in existence and last heard of in
   possession of the testator, but it could not be found after his death,
   a presumption arises that it was destroyed by his consent with intent
   to cancel it.

2. Such presumption is not conclusive, but it imposes upon the person
   asserting the will, the burden of proving that it was not so destroyed,
   or that the testator was not of sound mind at the time of such pre-
   sumed destruction.

3. Whether sufficient evidence has been furnished of the loss or des-
   truction of an instrument to admit parol proof of its contents, is a
   question upon which the finding of the Court below is conclusive.

4. A new trial will not be granted because of the admission of irrelevant
   testimony, unless it appears that the party objecting was prejudiced.

(*Bennet* v. *Sherrod*, 3 Ired., 303, cited and approved).

This was an issue of *devisavit vel non*, tried before *Philips,
Judge,* at Spring Term, 1887, of DURHAM Superior Court.

There was a verdict and judgment in favor of the de-
fendants, establishing the lost will of October, 1886, from which
plaintiffs appealed. The facts are fully stated in the opinion.

*Mr. John Manning,* for the plaintiffs.
*Messrs. John W. Graham* and *R. C. Strudwick,* for the de-
fendants.

SMITH, C. J. Two scripts, each purporting to be the last
will of Dicey Crabtree, both executed with the formalities
prescribed by law, one on January 18th, 1876, the other on
October 1st, 1886, a copy of an original alleged to be miss-
ing and lost, or destroyed, were exhibited before the clerk

for probate at the same time, and thereupon an issue of *devisavit vel non* as to each was framed, and the cause removed to the Superior Court of Durham for trial. The propounders of the last script, Rebecca A. Turner, a daughter, and Antonia Medlin, a granddaughter of the deceased, are the devisees to whom the land is given; and the said Antonia, the sole legatee to whom the personal estate is given, also assumes the relation of caveators to the first script. Upon the trial of the double issue, it was conceded that the deceased had a disposing mind and memory, nor was there any controversy as to the formal execution of both instruments by the testatrix. The last was drawn by R. C. Strudwick, Esquire, an attorney at law, in pursuance of her instructions and directions as to the manner in which she wished to dispose of her land and personal property, executed by her in the presence of two witnesses, whose names are subscribed, and in her presence attested by them. The testimony of the draughtsman is to the effect, that the testatrix stated at the time, that her granddaughter (the said Antonia, who came with her to Mr. Strudwick's office,) had lived with her for a long time, had been very faithful, and she desired to reward her; that Scoggins (the propounder of the first script, and to whose wife, Helen, the daughter of the testratrix, in that instrument her land is devised, but no mention made of the personal estate,) had as much of her property as she proposed for them to have; that Antonia had never received any portion of her estate; and that thereupon the script was drawn and executed, read over to her, and her assent given to it. The deceased put the script in her pocket and left.

Helen Scroggins died on October 8th, 1886, and on the 16th day of the same month, the testatrix became ill and died on the 22d of November following. Search was made for the lost will, but it could not be found, nor had it been

seen by any one since it went into the possession of the testatrix.

The propounder's counsel contended, that in the absence of any proof as to what became of the lost script, it being when last seen in the custody of the testatrix, the presumption is that it was destroyed by her with an intent to revoke, and such was the legal effect and that this presumption prevails, even when the repository of the paper is equally accessible to a stranger as to the deceased, and so were the jury in substance charged by the Court. *Bennett* v. *Sherrod,* 3. Ired., 303.

These further instructions were also asked for the propounders:

1. That the evidence offered by the caveators—the defendants—is not sufficient to rebut the presumption of law that the will of 1886 was destroyed by the testatrix, Dicey Crabtree, with the intent to revoke the same.

2. That the paper writing of October, 1886, having been traced to the possession of the testatrix, and not having been found at her death, the law presumes that she destroyed it herself, and the burden of proof is on the defendants to repel this presumption by satisfactory proof—that is, by a preponderance of testimony.

3. That there is no evidence to go to the jury that the plaintiff, J. C. Scoggins, or Will Crabtree, or any other person other than the testatrix herself, destroyed the paper writing of October, 1886, or that they concealed the same.

4. There is no evidence to go to the jury to rebut the presumption of law that the testatrix destroyed the will with the intent to revoke the same.

5. That if the jury shall find that there is not sufficient evidence to rebut the presumption of law of the destruction of the will by the testatrix herself, they shall find that the will of 1876 is the last will and testament of Dicey Crabtree,

provided they believe the testatrix had sufficient capacity then to execute a will.

6. That there is no evidence of the accidental destruction or loss of the will of 1886, and therefore the presumption of law that the testatrix herself intentionally destroyed it, is not repelled, and they (the jury) shall find that the will of 1876 is the last will and testament, provided they believe the testatrix had sufficient capacity then to execute a will.

The Court gave the instructions numbered two and five, and refused to give the others.

The Judge further charged the jury, that if they are satisfied that Dicey Crabtree formally executed her will in 1886, and the same not being revoked, is lost or destroyed, or mislaid, either in the lifetime of the testatrix, without her knowledge, or after her death, then the jury will find in favor of said will, and that the substance of the same is contained in the copy presented, if they believe the evidence as to what said will contained. Evidence that a will was once in existence, and last heard of in the possession of the testatrix, and that it was not to be found at her death, raises a presumption that it was destroyed by her with intent to cancel it. This presumption is not conclusive, but it serves to throw upon the party relying on the will, the burden of showing that it was not so destroyed, or that the testatrix was not of sound mind at the time.

The refused instructions may in substance be embodied in the single contention that there was no evidence in rebuttal of the presumption upon which the jury were at liberty to act. It hence became necessary to examine the testimony, to see if the contention is well founded. It does not appear how or when the script was lost or destroyed, and only that upon a search among the decedent's papers after her death, that it could not be found; nor does it appear that she expressed any dissatisfaction with, or wish to change, any of its provisions.

The said Rebecca testified, that owing to her own sickness, she did not see her mother after the visit to Mr. Strudwick's office until the night before she died; that she sat up with her on Sunday night, and that she died about midnight; that she remained and sat up on Monday night until about 3 o'clock, when she went to sleep, there being but one room in the house, and waked up at light; that she then saw a sack of papers (shown and identified by her) lying on the floor by the chest, which was not there when she went to bed; that it was her mother's sack, in which she kept her valuable papers, and the chest had no lock upon it; that when she went to sleep there were in the room Sallie Scoggins, Scynthia Lumley, and her daughter Antonia, and that she saw the propounder, J. C. Scoggins, there, before she went to sleep.

Cynthia Sears testified to her being at the house during decedent's illness, and on Sunday and Monday night, leaving about day, and that J. C. Scoggins came after Mrs. Turner retired, about 3 o'clock, and brought whiskey, and that he and several others remained when witness left.

Antonia Medlin testified, that she staid with her grandmother from the time of making the last will until her death; that J. C. Scoggins told witness that he had heard that her grandmother had made this last will, and inquired of her about it, and witness made no answer; that he said that France Lynn had told him, and after this, his visits became more frequent; that said Scoggins and Will Crabtree (an illegitimate son of Helen Scoggins) said they wanted witness to have the personal property, and the former declared that " he was going to have the land, or spend everything he had getting it; that he knew witness' father did not have any money, and he could get $300 before Christmas;" that he told her how the property was given in the last will; and this conversation took place the week after the decedent was taken sick.

She further testified, that about three weeks before decedent's death, Scoggins began to come and stay at night; that from the coming on of her illness, the decedent could not walk across the floor, and for a week or ten days before her death, she was helpless as an infant. Witness said that Scoggins was there when she died; that witness lay down about 4 or 5 o'clock in the morning, and the bag was not then by the chest; that she went out into the kitchen, and when she returned, after sunrise, the bag was on the floor, open, and her mother and Easter Carroll were in the room; that when she went out to get breakfast, Scoggins, his mother, Sally Scoggins, and Easter Carroll, were in the room, and when she came back, the two former had gone home.

Upon cross-examination, the witness said, that a few days before her grandmother's death, she searched in the bureau drawers for the will, but not in the bag, and did not find it; that she told of this search to Betsey Lumley, who asked why witness did not inquire of her grandmother, and witness said she had done so, and was told "that after she was dead was time enough to search for wills;" that she had two conversations with Scoggins, one a week after decedent was taken sick, and again on Friday before her death, about the will, and to witness, enquiring as to the whereabouts of the instrument, he said he had not seen it; that after her death he repeated that "the land was all he wanted, and he was going to spend all he had in getting it."

On re-direct examination the witness said her statement to Betsey Lumley, as to what deceased answered, was that "after she was dead and gone it would be time enough to have the will recorded," and that she looked in the bag on the floor, but did not find the will.

Upon being re-called, the witness Cynthia Sears, testified to the decedent's telling her before being taken sick, that she had her will written like she wanted it for her daughter, Rebecca, and her grand-daughter, Antonia, and said Mr.

Strudwick wrote it for her. There was other evidence of unsuccessful searches for the missing paper.

We have found it necessary to recapitulate the evidence thus fully and in detail, because, while there is no positive proof of the destruction of the will by any one, the circumstances are numerous upon which the jury were left to find that it was not the act or with the assent of the testatrix, and this was the only material matter of inquiry. It is of no moment what became of the paper, if it was not destroyed or cancelled by the testatrix or in her presence, and by her direction and consent, (*The Code,* § 2176), from which the *animus revocandi* is conclusively inferable. In such case it never became a will, and had no revoking power upon wills previously made, but if abstracted or destroyed without her concurrence, it would remain in force still, and be susceptible of restoration upon parol proof of its contents.

Now, were the jury warranted in finding upon the evidence offered in rebuttal, or rather was there any evidence upon which they could find against the presumed revocation? We think there was, and we propose briefly to point out some of it.

1. There has been shown no discontent, express or implied, of the testatrix with the last will or any of its provisions, while on the contrary, before she was taken sick, she reiterated her intention and wish to give her property as she had done in the instrument drawn by Mr. Strudwick.

2. It was in proof that the legatee, Antonia, spoke to decedent about the will, and received answer that it was time enough to look it up, or, as afterwards corrected by the witness, to have it recorded, after her death, and not an intimation is given of its having been destroyed.

3. The testatrix, when she became sick, was helpless and unable to walk over the floor, so as to get possession of the paper, and her granddaughter remained with her during her illness.

4. The bag in which her valuable papers were kept, was found in the morning next after the night of her death, open on the floor, near the unfastened chest, and several persons were there that night, and among them Scoggins, to whose wife the land was given in the prior will.

5. The repeated declarations of the latter, before as well as after death, of his determination to have the land, and in a conversation before her death, after learning the contents of the last will, if he "spent everything he had getting it"— of which no explanation was offered.

We do not undertake to say by whom the instrument was taken possession and removed or destroyed, but the circumstances stated do furnish evidence that the will had not been destroyed by the testatrix or with her consent, and this is the only essential finding to the re-establishment of it as the last, and a testamentary disposal of the estate.

The remaining exceptions relate to rulings upon the evidence.

The three first are to the admissions of proof of the contents of the missing will for want of proof of its loss. This was addressed to the Court, and the finding of the fact of such search is conclusive, and if open, is sustained by the evidence.

The fourth exception relates to proof of a falling out between the testatrix and Scoggins, his wife and her son, some two years before her death, and the fifth to the exclusion of evidence in denial of the testimony of one Fannie Turner, that Scoggins had, on one occasion, thrown a bucket of water on the deceased. This testimony tends only to show the reason why the deceased had revoked the first will and given the land to others, and these are wholly unimportant in presence of the undisputed fact that these testamentary changes were made. Whether she had any sufficient grounds for so doing is not an inquiry pertinent to the issue of her own act of revocation, as nothing transpired after the change was made to indicate a change of the purpose car-

ried out in the last instrument after its execution. But an inquiry in the terms used, "State whether or not the testimony of Fannie Turner as to the throwing a bucket of water upon Mrs. Crabtree is true," ought not to have been allowed in that form. It should have been so put as to elicit the witness' statement of facts, not merely to assail the veracity or truthfulness of the first witness, but to disprove her statement. But aside from this, the matter was apart from the issue, nor can we see that it tended to mislead the jury in determining the issue of the testatrix's voluntary agency in the cancellation of the last will, and thus reinstating the former. There is no error.

No error.                                Affirmed.