H. W. Wolfe, the testator, died at the age of 67, leaving personal property of the value of about $4,000, and more than 500 acres of land. He was never married and lived alone; his next of kin were his brothers and sisters. K. F. Luffman had been his miller and tenant for about 16 years, and lived with his family in a house near the mill site, 2 or 3 miles distant from the testator. Lillian Luffman was his daughter, and at the date of the paper offered for probate was about 15 or 16 years of age.
The propounder offered the following instrument for probate: "I, H. W. Wolfe, . . . do make and declare the following to be my last will and testament: "Item 1: I will and bequeath to Miss Mary Lillie Luffman a tract of land near Roaring Cap Postoffice, on (564) State Road and Southfork, adjoining the lands of J. M. Royal and others, the land bought by me from H. D. Woodruff, and I will that that land in case of my death go into her possession without any further writing whatever. Witness my hand and seal, this 31 July, 1911.
 "H. W. WOLFE. [SEAL.] His "T. W. (X) LUFFMAN, Mark His "K. F. (X) LUFFMAN." Mark
The clerk declined to probate it on the ground that another paper-writing, bearing date of 14 August, 1911, had already been probated as the last will and testament of H. W. Wolfe. An appeal was taken to the Superior Court, and at the trial evidence was offered tending to show the due execution of the instrument above set out. The caveators introduced Will Book No. 8, containing the record of the following paper-writing only probated: "I, H. W. Wolfe, . . . do make and declare this to be my last will and testament: Item: I will and bequeath *Page 594 
all my effects to my brothers and sisters, to be divided equally among them. Witness my hand and seal, this 14 August, 1911.
"H. W. WOLFE. [SEAL.]
 "R. W. HARRIS, "C. L. HARRIS."
The propounder tendered the following issue: "Is the paper-writing offered for probate of date 31 July, 1911, the last will and testament of H. W. Wolfe, or any part of his last will and testament?"
His Honor declined this issue and submitted the following:
"1. Is the paper-writing of date 14 August, 1911, probated and on record in the office of the clerk of the Superior Court of Surry County, Book of Wills No. 8, p. 50, the last will and testament of H. W. Wolfe, deceased?
"2. Is the paper-writing of 31 July, 1911, offered for probate by Lillie Luffman, the last will and testament of H. W. Wolfe, deceased?"
At the close of the evidence the trial judge instructed the jury upon all the evidence to answer the first issue "Yes," and the second "No." Judgment for the respondents. The propounder excepted and appealed.
The presiding judge, we presume, based his peremptory (565) instruction on the legal inference that the earlier paper-writing was revoked by the one of later date, for it is not at all probable that it was his purpose to withdraw from the jury any evidence tending to show the erasure of the original signature to the older instrument. We are therefore called upon to decide whether the instruction given is a necessary deduction from the facts disclosed by the record.
A will may revoked by a subsequent instrument executed solely for that purpose, or by a subsequent will containing a revoking clause or provisions inconsistent with those of the previous will, or by any of the other methods prescribed by law; but the mere fact that a second will was made, although it purports to be the last, does not create a presumption that it revokes or is inconsistent with one of prior date. C.S. 4133 et seq.;
Gardner on Wills, 266, 271; 1 Redfield on Wills, 350; 1 Jarman on Wills, 186 et seq.; In re Venable's Will, 127 N.C. 345; Fleming v. Fleming,63 N.C. 209.
The propounder admits that the instrument dated 14 August (herein *Page 595 
for convenience referred to as the second will) is a part of the maker's testamentary disposition, but insists that it does not affect the validity of the instrument dated 31 July, herein designated as the first will. By reason of this admission, the appeal presents the single question whether the two wills are so inconsistent that they cannot stand together, and whether the first is revoked by the second.
It has often been held that in the construction of wills the primary purpose is to ascertain and give effect to the testator's intention as expressed in the words employed, and if the language is free from ambiguity and doubt, and expresses plainly, clearly, and distinctly the maker's intention, there is no occasion to resort to other means of interpretation. Black's Inter-Laws, 37; Kearney v. Vann, 154 N.C. 315; Dicks v. Young,181 N.C. 448; Pilley v. Sullivan, 182 N.C. 493; McIver v. McKinney,184 N.C. 393; Ledbetter v. Culberson, 184 N.C. 488.
In the instant case, the language being clear and unequivocal, the chief controversy between the parties involves the meaning of the words "all my effects" as used in the second will. The propounder contends that they include only personal property; the respondents insist that the term embraces real as well as personal property, and that the second will revokes the first, the two being necessarily inconsistent.
The observation has been made that the individual cases construing "effects" are of value only for the purpose of illustration, each case being a law unto itself; but there seems to be a practical unanimity of judicial decision, with the exception of certain English cases; that the word "effects" used simpliciter or in a general or unlimited sense and unaffected by the context, signifies all that is embraced in the words "personal property," but is not sufficiently comprehensive (566) to include real estate. "Effects," however, may include land when used as referring to antecedent words which describe real estate, or when used in written instruments in which the usual technical terms are not controlling, as in University v. Miller, 14 N.C. 188; Graves v.Howard, 56 N.C. 302, and Page v. Foust, 89 N.C. 447. A discussion of these questions with an exhaustive citation of authorities may be found in the following cases with the subjoined explanatory notes: Andrewsv. Applegate, 12 L.R.A. (N.S.) 661; Dickson v. Dickson, L.R.A., 1918 F, 765; In re Molson, 18 Ann. Cas. 279; Gardner v. McNeal, Ann. Ca., 1914 A, 119.
In the second will there are no words which ex vi termini import a disposition of real property; there is no residuary clause or clause of revocation; and in these circumstances, as the courts do not favor the revocation of wills by implication, there appears to be no sound reason for holding that the two instruments are so inconsistent as to be *Page 596 
incapable of standing together, and that the first is necessarily revoked by the second. It is true there is a presumption that the testator intended to dispose of all his estate, and under our construction the testator died intestate as to the land not devised to Mary Lillie Luffman, but as said inAndrews v. Applegate, supra, such presumption, however strong, will not justify or warrant a construction incorporating in the second will any kind of property which cannot be brought within its terms.
Having admitted that the second will is a valid testamentary disposition of the property therein described, the propounder is entitled to have the jury determine whether the instrument dated 31 July, 1911, is any part of the maker's will. The judgment and verdict are therefore set aside and a new trial is awarded.
New trial.
Cited: Hyatt v. Hyatt, 187 N.C. 119; Westfeldt v. Reynolds, 191 N.C. 805;Scales v. Barringer, 192 N.C. 99; In re Will of Neal, 227 N.C. 138;In re Will of Crawford, 246 N.C. 326.