**IN RE WILL OF McCAULEY**

[147 N.C. App. 116 (2001)]

IN THE MATTER OF THE WILL OF WILLIAM ARNOLD McCAULEY, DECEASED

No. COA00-1195

(Filed 6 November 2001)

### Wills— caveat—subsequent will—no physical evidence

The trial court did not err by granting summary judgment in favor of the caveators of a will based on revocation by a subsequent will even though no physical evidence of the subsequent will was produced. A written will may be revoked by a subsequent written will and there is no requirement that the subsequent will be presented to the trial court, only that evidence be presented that it was executed according to the formalities of an attested will. Here, there was uncontradicted evidence that a new will was executed, attested by two witnesses, and notarized. It was noted that caveators were not contending that the subsequent will could be probated.

Judge CAMPBELL concurring.

Appeal by Max McCauley, executor of the estate of William Arnold McCauley, from an order and judgment filed 10 May 2000 by Judge Wiley F. Bowen in Harnett County Superior Court. Heard in the Court of Appeals 11 September 2001.

*Staton, Perkinson, Doster, Post and Silverman, P.A., by W. Woods Doster and Charles M. Oldham, III, for executor-appellant.*

*Hayes, Williams, Turner & Daughtry, P.A., by Gerald Wilton Hayes, Jr. and Parrish Hayes Daughtry, for caveator-appellees Phyllis M. Thomas, Paige Stallings, and Laurie J. McCauley.*

*Tart, Willis & Fusco, P.A., by Joseph L. Tart, for caveator-appellee Karen McCauley Thompson.*

GREENE, Judge.

Max McCauley (Executor), Executor of the estate of William Arnold McCauley (McCauley), appeals a 10 May 2000 order and judgment (the order) awarding summary judgment in favor of Phyllis M. Thomas (Phyllis), Paige Stallings (Paige), Laurie J. McCauley (Laurie), and Karen McCauley Thompson (Karen) (collectively, Caveators).

**IN RE WILL OF McCAULEY**

[147 N.C. App. 116 (2001)]

Executor, Caveators, and Earl Thomas McCauley (Earl) are the biological children of McCauley. On 13 June 1984, McCauley executed a last will and testament (the 1984 will). The 1984 will made no specific bequests or devises but left "the rest, residue and remainder of the property which [McCauley owned]" in fee and equal share to his two sons, Executor and Earl. After the death of McCauley on 4 February 1999, Executor applied to the probate court on 24 February 1999 for probate of the 1984 will.

On 22 March 1999, Phyllis and Paige filed a caveat to the 1984 will claiming that "in December of 1996[, McCauley], by properly executed paper-writing revoked all prior [w]ills . . . theretofore having been executed by him including, but not limited to, [the 1984 will]." A citation was then issued to Earl, Laurie, and Executor informing them that Paige and Phyllis had entered a caveat to the probate of the 1984 will. On 26 April 1999, Karen filed a motion for permission to intervene as a caveator in the action on the ground she was "a necessary party in [the] action as she [was] the daughter of [McCauley]." Karen's motion to intervene was allowed on 27 April 1999.

In his deposition testimony on 27 May 1999, Neill Ross (Ross) testified he began representing McCauley shortly after World War II. Over the course of the years, Ross represented McCauley on various occasions. At all times Ross was in contact with McCauley, McCauley exhibited the mental capacity necessary to make a will. Ross specifically recalled discussing a new will with McCauley in December 1996 and McCauley advising Ross "to prepare a [w]ill that would leave all of his property, both real and personal, equally to his children, except for a provision . . . with reference to MAX's Used Car Service." Ross, however, had "no independent recollection of ever having dictated [a w]ill [for McCauley in 1996] or of its contents." Although not denying he prepared a will for McCauley in 1996, Ross testified he could not, with certainty, admit he prepared a will for McCauley in 1996. If Ross did prepare a will for McCauley in 1996, he testified it would have had language revoking all wills and codicils previously made. Prior to McCauley's death, McCauley terminated Ross' representation and, as a consequence, Ross mailed all of McCauley's legal papers to McCauley.

In a deposition on 27 May 1999, Amber Shaw (Shaw), Ross' secretary, testified she had worked for Ross for the past eight years and had frequent contact with McCauley. In December 1996, after speaking with Ross concerning a new will, McCauley told Shaw he "had not been very fair to his girls and he wanted to make things right."

McCauley wanted "his children to be able to share alike, everything equally, and he did not want them to fuss after he was gone." Shaw recalled Ross giving her a dictated will for McCauley in December 1996 and reading the 1996 will to McCauley after having typed it. The 1996 will was executed according to the provisions in N.C. Gen. Stat. § 31-11.6 for self-proved wills. Shaw testified she notarized the 1996 will for McCauley in December 1996 and that Beatrice Coats (Coats) was one of the witnesses. Although Shaw recalled having two witnesses, she could not remember who was the other witness to the 1996 will. The 1996 will prepared by Shaw contained a provision revoking all prior wills and codicils.

Coats testified she worked in a law office next to the law office of Ross. Coats stated she did not have any recollection of having witnessed a will for McCauley, although it was not unusual for her not to specifically remember any particular will. Coats often witnessed wills prepared for the clients of Ross.

Executor testified that between 1984 through 1999, he periodically heard his father say he was making a new will. Executor, however, could not state whether or not McCauley followed through with making a new will. Executor recalled McCauley stating he changed his will leaving everything to his two ex-wives, and at their death, everything would be divided equally.

On 20 March 2000, Caveators made a motion for summary judgment asking the trial court find that the 1984 will was revoked by the 1996 will. Subsequently, Executor moved the trial court for summary judgment in his favor because "the discovery materials and pleadings in this action show that no document exists which revokes" the 1984 will. The trial court denied Executor's motion for summary judgment and granted summary judgment in favor of Caveators.

The dispositive issue is whether a will can be revoked by evidence of a subsequent will absent physical evidence of the subsequent will.

Executor argues the trial court erred in awarding summary judgment to Caveators because no paper writing was produced to establish the existence of the 1996 will. We disagree.

A motion for summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

**IN RE WILL OF McCAULEY**

[147 N.C. App. 116 (2001)]

as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1999). In ruling on a motion for summary judgment, the trial court is required to view the evidence in the light most favorable to the non-moving party. *Wrenn v. Byrd*, 120 N.C. App. 761, 763, 464 S.E.2d 89, 90 (1995), *disc. review denied*, 342 N.C. 666, 467 S.E.2d 738 (1996).

A written will may be revoked either "[b]y a subsequent written will or codicil or other revocatory writing" or by "being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it, by the testator himself or by another person in his presence and by his direction." N.C.G.S. § 31-5.1 (1999). If a will is revoked by a subsequent writing, the revocation must comply with the formalities necessary for the execution of a written will. N.C.G.S. § 31-5.1(1) (1999); *see In Will of Crawford*, 246 N.C. 322, 326, 98 S.E.2d 29, 32 (1957) (where evidence is lacking that paper writing "was executed according to the formalities necessary to make it a valid will," it was ineffective as a revocatory instrument). An attested written will is valid if it is "signed by the testator and attested by at least two competent witnesses." N.C.G.S. § 31-3.3(a) (1999). This attested will can be probated before the clerk of the superior court upon "the testimony of at least two of the attesting witnesses," upon the testimony of one attesting witness in some situations, and if none of the attesting witnesses are available, upon the proof of the handwriting of both attesting witnesses. N.C.G.S. § 31-18.1 (1999). The attested will can also be probated if made "self-proved in accordance with the provisions of G.S. 31-11.6." N.C.G.S. § 31-18.1(a)(4) (1999). As a general proposition, a will is "self-proved" if a notary verifies the testator signed the will in her presence and declared it to be his last will and testament, and if the notary verifies that two persons witnessed the testator sign the will. N.C.G.S. § 31-11.6 (1999).

In this case, viewing the evidence in the light most favorable to Executor, the non-moving party, the evidence supports a conclusion that the 1984 will was revoked in 1996. Although no tangible evidence of the 1996 will was presented to the trial court, there is no requirement the subsequent written will be presented to the trial court, only that there is evidence presented the subsequent writing was executed according to the formalities required of an attested will. *See* 2 William J. Bowe and Douglas H. Parker, *Page on the Law of Wills* § 21.48, at 432-34 (1960) (a lost will may still operate as a revocation of an earlier will if it is shown the lost will was executed in compliance with the statute and it contained a clause of revocation). There is uncon-

tradicted evidence that in December 1996, McCauley executed a new will attested to by two witnesses and notarized by Shaw. As this satisfies the requirements of a "self-proved" will, it complies with the formalities necessary for the execution of a written will. In addition, the 1996 will specifically contained a provision revoking all prior wills and codicils. Accordingly, as the undisputed evidence establishes McCauley revoked the 1984 will by a self-proved 1996 will,[1] the trial court properly granted summary judgment in favor of Caveators.[2]

Affirmed.

Judge BRYANT concurs.

Judge CAMPBELL concurs in a separate opinion.

CAMPBELL, Judge, concurring.

I concur with the majority that summary judgment was properly granted in favor of Caveators, but wish to call attention to the issue alluded to by the majority in footnote one. As pointed out by the footnote, the holding as to the purported 1996 will is limited. The revocation clause in the purported 1996 will operates as a revocation of the 1984 will, but that does not necessarily mean that the purported 1996 will can be probated. Even though there is evidence that McCauley executed a will in 1996, since it was last heard of in his possession and was not found at his death, there is a legal presumption that he destroyed this will with intent to cancel it. *Scoggins v. Turner*, 98 N.C. 135, 3 S.E. 719 (1887). Since the trial court was presented with evidence of the purported 1996 will, albeit not the writing itself, there is still an issue of *devisavit vel non*. I would remand the case to the trial court to resolve this issue. Once the issue of whether or not McCauley died testate is resolved, then the trial court should remand the matter to the judge of probate (here the Harnett County Clerk of Superior Court) to supervise the administration, settlement, and distribution of the estate pursuant to Chapter 28A of the North Carolina

---

1. Caveators do not contend, nor do we hold, the 1996 will can be probated. Our holding merely entitles the 1996 will to operate as a revocation of the 1984 will.

2. "Summary judgment is proper where there is no genuine issue as to any material fact." *Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 680, 535 S.E.2d 357, 361, *appeal dismissed and disc. review denied*, 353 N.C. 265, 546 S.E.2d 101 (2000); N.C.G.S. § 1A-1, Rule 56 (1999). "An issue is genuine where it is supported by substantial evidence." *Johnson*, 139 N.C. App. at 681, 535 S.E.2d at 361.

General Statutes. In my opinion, the trial court has this further obligation in an *in rem* proceeding such as this. *See In re Will of Hester*, 320 N.C. 738, 360 S.E. 2d 801, *reh'g denied*, 321 N.C. 300, 362 S.E.2d 780 (1987); *In re Will of Charles*, 263 N.C. 411, 139 S.E.2d 588 (1965); *see also* 1 James B. McLaughlin, Jr., & Richard T. Bowser, *Wiggins Wills and Administration of Estates in North Carolina* § 124, (4th ed.) (2000) (cases collected at note 2 through note 7).