IN THE MATTER OF THE WILL OF WILLIAM ARNOLD McCAULEY, DECEASED

No. 649PA01

(Filed 28 June 2002)

**1. Wills— revocation in subsequent will—production of revocatory writing—not exclusive manner of proof**

Caveators to a 1984 will were not precluded as a matter of law from establishing due execution of a 1996 will (which allegedly contained a revocation clause) even though they could not produce the 1996 will where they produced the legal secretary who discussed the 1996 will with the attorney, transcribed the 1996 will, read it to decedent, and observed and notarized the signatures of the decedent and two attesting witnesses. Production of the revocatory writing is not the only method of proving its existence and validity.

**2. Wills— lost—execution—proof by one witness**

The testimony of one witness was sufficient to prove the due execution of a lost will. While one attesting witness to a will would not be sufficient for valid execution, one witness's testimony that the will was attested by two witnesses may be sufficient to show that the will was duly executed.

**3. Wills— revocation—second will—proof of revocation required**

Caveators to a 1984 will who claimed that a lost 1996 will contained a revocation clause were required to show more than the mere existence of the second will; although a subsequent will frequently revokes all prior wills, it does not do so as a matter of law. Here, the testimony of the legal secretary who transcribed the will that it contained a revocation clause and that all of her attorney's wills contained such a provision could be sufficient.

**4. Wills—revocation—effective immediately**

Caveators to a 1984 will who claimed that a lost 1996 will contained a revocation clause did not need to prove the reason the 1996 will was unavailable. Although there is a presumption that the testator destroyed a missing will with the intention of revoking it, a revocation clause takes effect at the time of execution as opposed to the time of death. Furthermore, a revoked will may only be revived by reexecution, not by subsequent revocation of the revoking instrument.

IN RE WILL OF McCAULEY

[356 N.C. 91 (2002)]

**5. Wills—revocation in lost will—summary judgment**

Summary judgment could not be granted appropriately for caveators who contended that a lost 1996 will revoked a probated 1984 will where a legal secretary recalled the 1996 will, but the attorney did not and neither did one of the alleged attesting witnesses. The burden is on the caveators to show the due execution and the contents of a lost will by clear, strong, and convincing proof. Whether that standard was met here is for the jury to decide.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) of a decision of the Court of Appeals, 147 N.C. App. 116, 554 S.E.2d 13 (2001), affirming an order and judgment entered by Bowen, J., on 10 May 2000 in Superior Court, Harnett County. Heard in the Supreme Court 15 May 2002.

*Staton, Perkinson, Doster, Post & Silverman, P.A., by W. Woods Doster, for executor-appellant Max McCauley.*

*Hayes, Williams, Turner & Daughtry, P.A., by Gerald Wilton Hayes, Jr., and Parrish Hayes Daughtry, for caveator-appellees Phyllis M. Thomas, Paige Stallings, and Laurie J. McCauley.*

*Joseph L. Tart, P.A., by Joseph L. Tart; and Thompson, Smyth & Cioffi, L.L.P., by Theodore B. Smyth, for caveator-appellee Karen McCauley Thompson.*

PARKER, Justice.

The issue before the Court in this caveat proceeding is whether the Court of Appeals properly affirmed the trial court's entry of summary judgment for the caveators. For the reasons discussed herein, we reverse the decision of the Court of Appeals.

William Arnold McCauley ("decedent"), died on 4 February 1999. On 24 February 1999, decedent's son Max Ronald McCauley ("executor") presented to the Clerk of Superior Court of Harnett County for probate a will executed by decedent on 13 June 1984. This will devised the majority of decedent's estate to his two sons, Earl Thomas McCauley and the executor, and included a clause providing that decedent "deliberately made no provision herein for the benefit of my daughters."

On 22 March 1999 two of decedent's daughters, Phyllis McCauley Thomas and Paige McCauley Stallings, filed a caveat alleging that

**IN RE WILL OF McCAULEY**

[356 N.C. 91 (2002)]

decedent duly executed a will in 1996 which revoked the 1984 will, although the caveators could not produce this later will. On 26 April 1999 the trial court granted a motion to intervene as a caveator filed by Karen McCauley Thompson, another of decedent's daughters. By order signed 26 April 1999, the trial court also designated Laurie J. McCauley, decedent's remaining child, as a caveator.

Following discovery, the executor[1] moved for summary judgment, arguing that he was entitled to judgment as a matter of law in that the caveators could not produce the actual revocatory writing. The caveators[2] responded with their own motions for summary judgment on the basis that the undisputed evidence shows that the 1984 will was revoked. The evidence based on depositions and affidavits is as follows.

Neill Ross, an attorney who represented decedent in numerous matters, testified that in 1996 decedent discussed with Ross his desire to write a new will that divided his estate among his children equally. Ross has no memory regarding whether such a will was ever created and executed. However, Amber Shaw, Ross' secretary at the time, testified that she transcribed the new will from Ross' taped dictation. She further testified that she remembered decedent telling her that he was creating the new will to treat all of his children equally. She also remembered receiving a copy of the 1984 will from decedent to ensure the proper spelling of names in the new will. Shaw testified that she read the will to decedent; that decedent executed the new will in front of two attesting witnesses, Beatrice Coats and another person whom Shaw could not recall; and that Shaw then notarized all of the signatures. Coats, however, stated in her deposition that she has no memory of witnessing a will for decedent. In her affidavit and deposition, Shaw stated that the 1996 will contained a provision revoking all prior wills.

Following decedent's death, two of the caveators went to Ross' office to ask Shaw for a copy of the 1996 will. Shaw was unable to locate the document as all documents of continuing importance had

---

1. Although both Max McCauley and his brother, Earl Thomas McCauley, are the propounders of the 1984 will, for clarity we refer to arguments supporting the 1984 will as being made by the executor.

2. Although Thompson is more properly termed an intervenor caveator and is represented by separate counsel who has submitted a separate brief, for the sake of clarity, we refer to all of decedent's daughters collectively as "the caveators." Likewise, we treat the evidence and arguments presented by any caveator as being presented by the caveators collectively.

been sent to decedent when, at some time after executing the 1996 will, decedent ended his attorney-client relationship with Ross and requested that all files be sent to decedent's home.

Based upon this evidence, the trial court denied the executor's motion for summary judgment and granted summary judgment in favor of the caveators. The executor appealed, and the Court of Appeals affirmed the trial court's judgment. *In re Will of McCauley*, 147 N.C. App. 116, 120, 554 S.E.2d 13, 16 (2001).

[1] Before this Court the executor argues that the trial court erred in granting the caveators' motion for summary judgment and in denying the executor's motion for summary judgment. In deciding whether summary judgment was appropriate, we must first consider whether the caveators can, as a matter of law, challenge the probated 1984 will without producing the alleged 1996 will and the attesting witnesses. The method for revoking a will is prescribed by N.C.G.S. § 31-5.1, which provides as follows:

A written will, or any part thereof, may be revoked only

(1) By a subsequent written will or codicil or other revocatory writing executed in the manner provided herein for the execution of written wills, or

(2) By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it, by the testator himself or by another person in his presence and by his direction.

N.C.G.S. § 31-5.1 (2001). Before this Court the executor argues, as he did below, that the only evidence competent to show the due execution of a revocatory writing is the writing itself. The executor contends that without the actual written revocation, the caveators cannot show its existence and validity. We disagree.

In *In re Will of Crawford*, this Court considered testimony regarding a lost will that allegedly revoked the will offered for probate. *In re Will of Crawford*, 246 N.C. 322, 325-26, 98 S.E.2d 29, 31-32 (1957). Although the Court held that the later holographic will did not revoke the will offered for probate, *id.* at 326, 98 S.E.2d at 32, it did not do so on the basis that the actual will containing the revocation was not presented. Instead, the Court considered the testimony of the single witness and determined that the testimony was insufficient to establish all of the elements necessary to show that the later will was

duly executed. *Id.* Thus, this Court has implicitly held that production of the revocatory writing itself is not the only method to prove its existence and validity. Of note, N.C.G.S. § 31-5.1 was last amended in 1953, four years before the decision in *Crawford,* and was applicable in *Crawford.* Moreover, prior case law allows proof of the due execution and contents of a lost will by evidence other than production of the written will itself. *In re Will of Hedgepeth,* 150 N.C. 245, 251, 63 S.E. 1025, 1027 (1909).

In this case, the alleged revocatory writing is in a will that cannot be located. The party attempting to prove a lost will has the burden:

> (1) [To show t]he formal execution of the will, as prescribed by the statute. This he could do by calling the subscribing witnesses or[,] by accounting for their absence, resorting to the best competent evidence obtainable. (2) To show the contents of the will, if the original was not produced. This, as we have said, could be done by a single witness, if no other was obtainable. (3) To show that the original will was lost or had been destroyed otherwise than by the testatrix or with her consent or procurement. The will not being found, there is a presumption of fact that it was destroyed by the testator *animo revocandi.*

*Id.* (citations omitted). The propounder of the lost will must also show that the testator is dead, *id.* at 250, 63 S.E. at 1027, and "that the instrument cannot be found after diligent search and inquiry," *In re Will of Wood,* 240 N.C. 134, 137, 81 S.E.2d 127, 129 (1954). In the present case the parties do not dispute the testator's death or that a diligent search has been made for the 1996 will; hence, the caveators as propounders of the lost will need only prove formal execution of the alleged 1996 will, show the contents of the will, and overcome the presumption of revocation.

In an ordinary case, due execution is proven by the testimony of the attesting witnesses, *In re Will of Franks,* 231 N.C. 252, 256, 56 S.E.2d 668, 672 (1949), or by a self-proved will pursuant to N.C.G.S. § 31-11.6. Proof of the execution of a will that is not self-proved ordinarily requires the testimony of two attesting witnesses. However, if testimony of the attesting witnesses is unavailable, due execution of a will may still be proven. This Court has stated:

> "The law makes two subscribing witnesses to a will indispensable to its formal execution. But its validity does not depend solely

upon the testimony of the subscribing witnesses. If their memory fail, so that they forget the attestation, or they be so wanting in integrity as willfully to deny it, the will ought not to be lost, but its due execution and attestation should be found on other credible evidence. And so the law provides."

*In re Will of Redding,* 216 N.C. 497, 498, 5 S.E.2d 544, 545 (1939) (quoting *In re Will of Kelly,* 206 N.C. 551, 553, 174 S.E. 453, 454-55 (1934)). Likewise, if the attesting witnesses to a lost will " 'are dead, or their presence cannot for any valid reason be procured, the execution of the will may be proved by substitutionary evidence.' 1 Underhill Wills, sec. 274." *Hedgepeth,* 150 N.C. at 249-50, 63 S.E. at 1027.

In this case one of the witnesses to the 1996 will has no memory of the event, and the identity of the second witness is unknown. The substitute evidence of due execution offered by the caveators is the testimony of Shaw, the secretary who discussed with the decedent the changes to be incorporated into the 1996 will, transcribed the 1996 will, read the 1996 will to the decedent, and observed and notarized the signatures of the decedent and the two attesting witnesses. Other than testimony from the attesting witnesses, the absence of which is validly accounted for, this evidence is "the best competent evidence obtainable." *Id.* at 251, 63 S.E. at 1027. Accordingly, the caveators are not precluded as a matter of law from establishing due execution of the lost 1996 will.

[2] The executor contends that since the statute requires two attesting witnesses to make a valid will or revocatory writing, the testimony of one witness is not sufficient to prove a valid revocation. This argument blurs the distinction between what is required for duly executing a will and what is required for proving that a will was duly executed. While N.C.G.S. § 31-3.3 requires the signatures of two attesting witnesses for a will to be valid, our case law demonstrates that, once the will has been duly executed, other methods are available to prove that execution by the testator before two attesting witnesses occurred. Thus, while only one attesting witness to a will would not be sufficient for valid execution, one witness' testimony that the will was attested by two witnesses may be sufficient to show that the will was duly executed.

The executor's reliance on *Crawford,* 246 N.C. 322, 98 S.E.2d 29, to support his contention that more than one witness is necessary to prove due execution of a will is misplaced. While the Court in

*Crawford* did hold that the evidence was insufficient to prove that the lost will was properly executed, *id.* at 326, 98 S.E.2d at 32, it did not base this decision on the fact that all of the evidence was presented by only one witness. Rather, the Court noted that the evidence presented by that witness did not establish that there was a second attesting witness or that the holographic will in question was properly lodged for safekeeping. *Id.* Thus, the Court based its holding that the second will was not duly executed, and therefore "ineffective as a revocatory instrument," *id.*, not on the basis that only one witness testified to the execution, but on the basis that the evidence presented by that witness was insufficient to show due execution.

Having determined that the testimony of one witness is sufficient to prove the due execution of a lost will, we need not address the caveators' issue of whether evidence that the lost will was self-proved pursuant to N.C.G.S. § 31-11.6 is sufficient to show due execution.

[3] The caveators contend that they seek only to prove that the 1996 will existed and was duly executed rather than the contents of that lost will and that, thus, a holding that due execution may be proven by the testimony of one witness is dispositive of this appeal. Essentially, the caveators argue that this is not a lost will case in that they are not attempting to probate the 1996 will, but seek only to show the mere existence of that will. We disagree.

Although a subsequent will frequently revokes all prior wills, a subsequent will does not as a matter of law revoke all prior wills.

A will may be revoked by a subsequent instrument executed solely for that purpose, or by a subsequent will containing a revoking clause or provisions inconsistent with those of the previous will, or by any of the other methods prescribed by law; but the mere fact that a second will was made, although it purports to be the last, does not create a presumption that it revokes or is inconsistent with one of prior date.

*In re Will of Wolfe*, 185 N.C. 563, 565, 117 S.E. 804, 805-06 (1923). Thus, a mere showing that a later will existed has no legal effect, in itself, on the continued validity of the earlier will as the existence of a later will "does not create a presumption that it revokes" a prior will. *Id.* at 565, 117 S.E. at 806. To prevail on their claim the caveators must, therefore, prove that one of the provisions contained in the 1996 will was a revocation of the 1984 will. Thus, the caveators are

mistaken in arguing that they need only prove due execution of the 1996 will and not its contents.

" 'The contents of a lost will may be proved by evidence of a single witness, though interested, whose veracity and competency are unimpeached.' " *Hedgepeth*, 150 N.C. at 249, 63 S.E. at 1027 (quoting *Sugden v. Lord St. Leonards*, 1 P.D. 154 (1876)). Thus, the propounder of a lost will has the burden "[t]o show the contents of the will, if the original was not produced. This, as we have said, could be done by a single witness, if no other was obtainable." *Id.* at 251, 63 S.E. at 1027. In this case, Shaw testified that every will prepared by Ross' office contained a revocation provision and that this will was no exception. Indeed, in her affidavit, Shaw states unequivocally that the 1996 will contained a revocation provision. As no other evidence of the content of the will is obtainable, the testimony of this one witness may be sufficient to show that the lost 1996 will contained a provision revoking all prior wills.

[4] The final requirement under *Hedgepeth* is for the caveators to overcome the presumption that the testator destroyed the missing will *animo revocandi*, that is, with the intention to revoke it. The caveators make no argument in their briefs attempting to overcome this burden, and counsel concede that the caveators could not overcome such a presumption. However, given the unique status of revocation provisions in comparison to other provisions in a will, the presumption that a lost will was destroyed by the testator *animo revocandi* is immaterial with respect to a revocation provision contained in that missing will. Thus, to enforce the revocation clause in a lost will, the caveators must prove the inclusion of a revocation provision in the lost will; but they need not establish that the lost will is missing for a reason other than its destruction by the testator *animo revocandi*.

Generally, the provisions of a will are ambulatory in nature, meaning that they speak only at the death of the testator; prior to the testator's death these ambulatory provisions have no effect and can be modified by the testator at anytime. *Rape v. Lyerly*, 287 N.C. 601, 618, 215 S.E.2d 737, 748 (1975); *In re Will of Bennett*, 180 N.C. 5, 11, 103 S.E. 917, 920 (1920). At common law revocation clauses were also deemed to be ambulatory. Accordingly, as a revocation clause did not speak until the testator's death, destruction of a later will containing a revocation clause meant that the revocation clause never took effect. *Hyatt v. Hyatt*, 187 N.C. 113, 119, 120 S.E.2d 830, 833 (1924) (holding that the revocation clause in a later will was

IN RE WILL OF McCAULEY

[356 N.C. 91 (2002)]

ambulatory and of no effect until the testator's death); *see also* 1 James B. McLaughlin, Jr. & Richard T. Bowser, *Wiggins: Wills and Administration of Estates in North Carolina* § 109(a) (4th ed. 2000).

Modern jurisprudence, however, is that a revocation provision is not ambulatory; rather, a revocation clause takes effect immediately at the time of execution of the will as opposed to taking effect at the death of the testator. *See, e.g., In re Will of Mitchell*, 285 N.C. 77, 81, 203 S.E.2d 48, 50 (1974) (" 'Revocation being a "thing done and complete" is not in its nature ambulatory.' ") (quoting *In re Estate of Berger*, 198 Cal. 103, 110, 243 P. 862, 865 (1926)). In *In re Will of Farr*, 277 N.C. 86, 87, 175 S.E.2d 578, 579 (1970), the testator executed a will in 1961. The testator later executed a codicil, codicil five, revoking two articles of the 1961 will. *Id.* at 88, 175 S.E.2d at 580. Subsequent to execution of codicil five, the testator executed codicil six, which revoked codicil five. *Id.* Justice Sharp (later Chief Justice), writing for the Court, stated:

> The consequence of [the testator's] fifth codicil . . . was to revoke Articles Four and Thirteen of the original will and to substitute different provisions for them. The effect of the sixth codicil was to revoke the fifth. However, Articles Four and Thirteen of the will were not reinstated by the revocation of codicil No. 5 which had nullified them.

*Id.* at 91, 175 S.E.2d at 581. Further, " '[u]nder statutes making re-execution essential to revival [of a revoked will], the mere revocation of the subsequent will does not revive a prior will, even though the testator so intended.' " *Id.* at 91, 175 S.E.2d at 581-82 (quoting 95 C.J.S. *Wills* § 301(3) (1957)). This analysis demonstrates that the revocation portion of codicil five became effective immediately at execution rather than at the testator's death. Were the revocation provision in the later codicil not effective until the testator's death, revocation of codicil five would have negated the effect of the revocation provision in codicil five. Moreover, the statement that "revocation of the subsequent will does not revive a prior will," *id.* at 91, 175 S.E.2d at 582, would have been unnecessary. Thus, the law is that revocation clauses are not ambulatory and, unlike the other provisions of a will, are effective upon execution. Therefore, upon the due execution in conformity with applicable statutes of a will containing a provision revoking all prior wills, all prior wills are instantaneously revoked.

**IN RE WILL OF McCAULEY**

[356 N.C. 91 (2002)]

Once a will is revoked, it may not be revived by subsequent revocation of the revoking document; rather, it may be revived only by reexecution. N.C.G.S. § 31-5.8 (2001); *Farr*, 277 N.C. at 91, 175 S.E.2d at 581. Although a "layman, ignorant of [this rule], might be expected to assume that if he revoked [the revoking instrument] the revocation would revive those previously revoked provisions[,] . . . in the absence of fraud, a testator's misunderstanding of the legal effect of a will or codicil will not ordinarily affect its validity." *Farr,* 277 N.C. at 92, 175 S.E.2d at 582.

Accordingly, in this case, if the 1996 will revoked the 1984 will, the 1984 will was not resurrected or revived by the revocation of the 1996 will. Hence, as to the revocation provision, the presumption that the 1996 will was destroyed by the testator *animo revocandi* was immaterial as later revocation of the 1996 will would have no legal effect on the revoked status of the 1984 will. If the 1996 will was duly executed and contained a revocation clause, the fate of the 1984 will was sealed regardless of the testator's subsequent intentions and actions regarding the 1996 will.

Absent this presumption, the caveators need not prove why the will is unavailable. The caveators as propounders of a revocation provision in a lost will need only show that the will was validly executed and the contents of the will, namely, the revocation clause.

The caveators in this case seek only to prove the revocation provision of the 1996 will. Based upon the intrinsically unique nature of a revocation provision as the only provision of a will that speaks before death, our holding is limited to permitting proof of the revocation provision without proof of any other provisions. The question whether specific ambulatory provisions may be proven without proof of all ambulatory provisions in a lost will is not before the Court in this case and is not addressed.

[5] Having determined that the caveators are not precluded as a matter of law from challenging the 1984 probated will without producing the alleged 1996 lost will and the attesting witnesses, we must now address whether summary judgment for the caveators was appropriate in this case. Rule 56(c) of the North Carolina Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001). Further,

IN RE WILL OF McCAULEY

[356 N.C. 91 (2002)]

the nonmoving party may not rely on the mere allegations and denials in his pleadings but must by affidavit, or other means provided in the Rules, set forth specific facts showing a genuine issue of fact for the jury; otherwise, "summary judgment, if appropriate, shall be entered against [the nonmoving party]." N.C.G.S. § 1A-1, Rule 56(e). Interpreting the criteria for summary judgment, this Court has stated that

> [t]o be entitled to summary judgment the movant must . . . succeed on the basis of his own materials. He must show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from his evidence; and that there is no standard that must be applied to the facts by the jury.

*Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976).

In this proceeding the burden of proof is on the caveators to show the due execution and contents of a lost will by clear, strong, and convincing proof. *Williams v. Blue Ridge Bldg. & Loan Ass'n*, 207 N.C. 362, 364, 177 S.E. 176, 177 (1934) (stating that the degree of proof necessary to prove the terms of a lost will is clear, strong, and cogent proof). The phrase "clear, strong, and cogent" means such evidence as " 'should fully convince.' " *Id.* (quoting *Greenleaf-Johnson Lumber Co. v. Leonard*, 145 N.C. 339, 344, 59 S.E. 134, 135 (1907)). This standard of proof is also referred to as "clear, strong, and convincing." *McCorkle v. Beatty*, 226 N.C. 338, 342, 38 S.E.2d 102, 105 (1946).

Applying these principles to the present case, we conclude that summary judgment for the caveators could not appropriately be granted. The evidence reflects that the attorney did not recall dictating the 1996 will and that Coats, one of the alleged attesting witnesses, did not remember witnessing the will. This evidence permits inferences inconsistent with the caveators' recovery. *See Kidd*, 289 N.C. at 370, 222 S.E.2d at 410. Further, the clear, strong, and convincing standard must be applied to the evidence by a jury. *Id.* The mere fact that the executor could not produce affidavits to rebut Shaw's testimony does not require the trial court to assign credibility to the caveators' supporting affidavits and deposition testimony. *See Id.* If there is any question that can be resolved only by the weight of the evidence, summary judgment should be denied. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979). In this case one witness' testimony is pivotal in determining whether the 1996

IN RE WILL OF McCAULEY

[356 N.C. 91 (2002)]

missing will was ever made, whether two witnesses attested the will, whether decedent signed the will, and whether the will contained a revocation clause. Whether the evidence on these questions is clear, strong, and convincing is for the jury to decide.

The caveators contend that the executor stipulated that the 1996 will was validly executed and contained a revocation provision. In his motion, the executor states that the propounders of the 1984 will

hereby move for summary judgment in that the discovery materials and pleadings in this action show that no document exists which revokes the last will of [decedent] dated June 13, 1984, and that the propounders of this will are entitled to judgment as a matter of law.

This motion, along with the entire record before us, shows that the executor argued that the only way to prove the revocation of the 1984 will was to present the written revocation itself. In this context, any stipulations made by the executor as to Shaw's testimony and the due execution and content of the 1996 will were an acknowledgment that these facts were immaterial, not that they were undisputed. Determination of the due execution and content of the 1996 will is essential to the outcome of this case. The executor's stipulation that such a determination is immaterial is, therefore, irrelevant.

We are mindful that fraud is always a concern in cases such as this one, but we believe our holding today strikes a balance between the competing interests likely to engage in fraud. Were we to adopt the rule espoused by the executor, that only the written revocation itself can prove revocation, a malfeasant devisee or beneficiary who destroyed a revoking document in order to receive benefits under the revoked will would likely not be challenged. Furthermore, such a rule would flaunt the intention of N.C.G.S. § 31-5.1 in that it would allow, *de facto*, the revival of the revoked will. Conversely, our ruling today does not foreclose the possibility of fraud by an heir at law's fabricating a revocation to create intestacy; however, the trial process with the requirement that proof be clear, strong, and convincing provides the crucible in which to test the truthfulness of the testimony and safeguard against such fraud.

For the foregoing reasons, we hold that the Court of Appeals erred in affirming the trial court's entry of summary judgment for the caveators and that the trial court properly denied the executor's

motion for summary judgment. Accordingly, we remand this case to the Court of Appeals for further remand to the trial court for further proceedings not inconsistent with this opinion.

· REVERSED AND REMANDED.