BROWN, J., concurring in result; WALKER, J., concurs in the concurring opinion.
The facts are stated in the opinion.
This is an issue of devisavit vel non. The grounds alleged by the caveators, as set out in their brief, were non-execution, mental incapacity and undue influence. The court at first submitted one issue: "Is the paper-writing propounded by T. J. Herring and others, and every part thereof, the last will and testament of William I. Herring, deceased?"
After the case had been submitted to the jury the court of its own motion added the following three issues:
1. Was the paper-writing offered for probate as the last will and testament of W. I. Herring, signed and executed according to law?
2. If so, did the said Herring have the mental capacity to make a will?
3. If so, was the execution of said paper-writing procured by undue influence?
To the addition of these issues the caveators excepted.
It is settled by numerous and uniform decisions that "the number and form of issues rest in the discretion of the court, if every phase of the contention could have been and was presented." Patterson v. Mills,121 N.C. 266; Rittenhouse v. R. R., 120 N.C. 544; Humphrey v. Church,109 N.C. 132; Denmark v. R. R., 107 N.C. 185. In Deaver v. Deaver, *Page 250 137 N.C. 246, Walker, J., thus sums up the result of our decisions: "It is not material in what form issues are submitted to the jury, provided they are germane to the subject of the controversy and each party has a fair opportunity to present his version of the facts and his view of the law, so that the case, as to all parties, can be tried on the merits. Warehouse Co.v. Ozment, 132 N.C. 839." This has been followed in numerous cases since, among them Lance v. Rumbough, 150 N.C. 25; Bank v. Ins. Co., ib., 775. The issue first submitted is the usual one in such cases, but is not required by any statute or rule of practice, and the presiding judge was within the scope, not only of his authority, but of his duty, in submitting the additional issues, if he thought it would tend to make easier to the jury the elucidation of the facts. Rev., 614; R. R. v. Stroud, 132 N.C. 416;Springs v. Scott, ib., 551.
It was in evidence that G. E. Kornegay and W. D. Raynor (260) subscribed their names as witnesses in the immediate presence of the testator and of each other, but that he did not sign it in their presence. His Honor properly instructed the jury that it was "Necessary that he should either sign his name in the presence of witnesses or should acknowledge his signature thereto in their presence. If from the evidence in this case you do not find that he signed it or did not acknowledge it in their presence, then you should find that the paper-writing is not the last will and testament of W. I. Herring. It is not necessary, however, that this acknowledgment be made in words. The maker of a will can make an acknowledgment of his signature by acts and conduct as well as by words, and if you find that there was such acknowledgment, that will be sufficient acknowledgment under the law. It must also be witnessed in the presence of the party making the will, and he must either see the witnesses sign it or he must be in a position to see them sign it, and to see if they are signing the paper-writing that he signed. If you find from the greater weight of the evidence in this case that witnesses were in his presence, and if you further find that he was in a position that he could see them sign it and know that they were signing the paper-writing which he had signed, that would be a sufficient signing in the presence of the party making the will. They must also sign as witnesses at his request. It is not necessary, however, that he should make the request himself. If he authorizes some one else to get witnesses, and ask them to sign, then the party that he sends out will act as agent, and a request made by said person would be the request of the party signing the will." This is a clear and accurate statement of the law applicable. Burney v. Allen, 125 N.C. 314.
G. E. Kornegay testified that he signed the paper-writing as a witness; that Mr. Isler came to his store and asked him to go to his law *Page 251 
office for the purpose of witnessing the will of Mr. W. I. Herring; that he went up to the office, and the other subscribing witness, Mr. Raynor, Mr. Herring and Mr. Isler, were present; that Mr. Herring acknowledged that he had signed the paper-writing, and he signed it in his presence; that Mr. Herring was just in front of him, across the table, and saw him sign.
Mr. W. D. Raynor testified that Mr. Isler came to him and asked him to go to his office to witness Mr. W. I. Herring's will; that he went there and found Mr. G. E. Kornegay there, Mr. Herring and Mr. Isler; that Mr. Herring was sitting in front of him, on the other side of the desk, and saw him when he signed the paper-writing as a witness; that Mr. Herring, Mr. Kornegay, Mr. Isler and himself were all present in the room at the time, but that, so far as he could remember, (261) nothing was said at that time as to what the paper was.
Mr. Isler testified that Mr. Herring came to him to write his will; that he took a memorandum of its provisions; that he wrote it; that Mr. Herring came again and took the paper-writing with him to examine it; that he afterwards brought it back and he said it was all right; that Mr. Herring asked him to get the witnesses, and he got Mr. Kornegay and Mr. Raynor to come to his office for that purpose; that after they came he said to them, and said to Mr. Herring, "I have brought witnesses to the will," and that Mr. Herring said, in the presence of Kornegay and Raynor, that it was his will.
His Honor arrayed the contentions of both parties and charged the law correctly, as above stated. The jury found in response to the first and second issues that the paper-writing was signed and executed according to law, and that Herring had mental capacity to make a will. His Honor further instructed the jury that if it should answer these two issues "Yes," they should answer the third issue "No." This was correct, for there was no evidence of undue influence in procuring the execution of the will fit to go to the jury. His Honor also correctly told the jury that if they answered the first and second issues "Yes," to answer the fourth or original issue "Yes," this being the result necessarily of the finding upon the other three issues.
The caveators insist strenuously that the court should have given their sixth prayer for instructions: "An acknowledgment, in order to be effective, must be in such a manner as to enable each of the witnesses to hear it, and, moreover, it must be actually heard by each of the witnesses, else it is no acknowledgment as to the one who does not hear it."
The next two exceptions are for a refusal to give two other prayers to same effect, with some variation in the language, but to the same purport, that the acknowledgement must be actually heard by both witnesses. *Page 252 
Our statute makes no such requirement. Rev., 3113. It simply provides that the will must be signed by the testator, or by some one in his presence and by his direction, "and subscribed in his presence by two witnesses at least, no one of whom shall be interested in the devise or bequest of the said estate, except as hereinafter provided." There is no requirement that the testator shall sign in the presence of the witnesses nor acknowledge it in their presence. As his Honor told the jury, the acknowledgment need not be made in words, but the jury can find that there was an acknowledgment as an inference from his acts (262) and words. Mr. Isler testified that he requested the witnesses to go to his office and sign this paper, acting for Mr. Herring, and he was corroborated by both witnesses. If the jury believed this evidence, the witnesses signed at the request of Mr. Herring and in his presence. There was not one scintilla of evidence that another paper had been surreptitiously substituted for the will before it was subscribed by the witnesses, or denying the genuineness of Herring's signature. It was not error to refuse the charge upon a supposition not sustained by any evidence. In re Burns' Will, 121 N.C. 336.
There are other exceptions, but they require no discussion. In the interesting supplementary brief filed by Mr. Rountree he demonstrates by citations from authorities upon the civil law and the common law, and, also, by reference to the Code of Napoleon, that the power to devise property by a last will and testament exists only by statute law, which time be modified or abrogated. This Court has heretofore expressed the same conclusion, Hodges v. Lipscomb, 128 N.C. 57.
No error.