IN RE WILL OF ISABELLA KELLY.

(Filed 23 May, 1934.)

**Wills C e—Evidence held sufficient for jury on question of whether testatrix requested attesting witnesses to sign the paper-writing.**

The evidence in this caveat proceeding was to the effect that the subscribing witnesses, at the request of the chief beneficiary under the will, took the paper to the testatrix at her home where she was confined to her bed by sickness, that the will was read to her, and that in response to a question as to whether she understood it she nodded her head affirmatively, and that she touched the pen, making her mark, after being shown

---

the line for her name, and that she could see the blank lines for the names of the attesting witnesses, and that thereafter the attesting witnesses signed the attesting clause in her presence: *Held*, the evidence was sufficient to be submitted to the jury on the issue of due attestation, it being for the jury to determine whether the testatrix impliedly requested the attesting witnesses to attest the will, an implied request being sufficient. C. S., 4131.

Appeal by propounders from *Stack, J.,* September Term, 1933, of Moore.

Issue of *devisavit vel non,* raised by a caveat to the will of Isabella Jane Kelly, late of Moore County, based upon alleged want of due attestation, etc.

The paper-writing propounded as the last will and testament of the alleged testatrix is signed in her name by her mark and witnessed by John M. Black and Jesse B. McKenzie with the usual attestation clause: "Signed, sealed, published and declared by the said Isabella Jane Kelly to be her last will and testament in the presence of us, who, at her request, and in her presence, do subscribe our names as witnesses thereto."

It is in evidence that Kenneth Caddell, the chief beneficiary under the supposed will, requested the two witnesses to take the paper-writing, which had evidently been prepared by an attorney, to the home of the testatrix and witness her execution and publication thereof. This they did. The will was read to the testatrix, who was in bed, sick at the time, and she was asked if she understood it. She assented by nodding her head, and then touched the pen after being shown the line for her name. The two witnesses signed in her presence. Both testified, on cross-examination, that there was no specific request on the part of the alleged testatrix at the time that they witness her will.

Upon this evidence, the court directed a verdict in favor of the caveators, being of opinion that the attestation was not sufficient.

The propounders appeal, assigning errors.

*U. L. Spence for propounders.*
*Samuel R. Hoyle, W. R. Clegg and L. B. Clegg for caveators.*

Stacy, C. J. Viewing the evidence in its most favorable light for the defeated parties, the established rule on a directed verdict (*In re Will of Deyton,* 177 N. C., 494, 90 S. E., 424), we are of opinion that it is sufficient to carry the case to the jury on the issue of due attestation.

It is true, the decisions are to the effect that the subscribing witnesses to a will, in some responsible way, should be requested to witness its execution. *In re Herring's Will,* 152 N. C., 258, 67 S. E., 570. This may be implied from the circumstances and the conduct of the testator.

*Burney v. Allen,* 125 N. C., 314, 34 S. E., 500. Or it may be shown that another was commissioned to make the request. *In re Herring's Will, supra.* It is not necessary that the testator spell it out in so many words. *Allison v. Allison,* 46 Ill., 61, 92 Am. Dec., 237. A constructive request is sometimes considered the equivalent of an actual request. 28 R. C. L., 127; *Lane v. Lane,* 125 Ga., 386, 114 Am. St. Rep., 207, and note. As a testator, who is not able or does not choose to write a holograph will, is obliged by the law to depend upon witnesses, he should be allowed to select them in his own way. *Graham v. Graham,* 32 N. C., 219. Indeed, except by implication, the statute, C. S., 4131, is silent on the point.

"Generally, the witnesses are not required to subscribe the will at the express request of the testator. He need not formally request the witness to attest his will as the request may be implied from his acts and from the circumstances attending the execution of the will. Thus, a request will be implied from the testator's asking that the witness be summoned to attest the will, or by his acquiescence in a request by another that the will be signed by the witness." Thompson on Wills, 449; *In re Will of Deyton, supra.*

There is no direct testimony that Kenneth Caddell was commissioned by the testatrix to secure witnesses to her will—though this might be inferred—but it would seem to be a reasonable inference that she herself impliedly requested them to attest it. The will was read to her; she understood its meaning, and assented to its execution (*Lee v. Parker,* 171 N. C., 144); she was shown the line where her name was to appear; beneath this were the spaces for the names of the subscribing witnesses; she could see that they were signing the same paper which she had signed as her will. *Graham v. Graham, supra.*

The law makes two subscribing witnesses to a will indispensable to its formal execution. But its validity does not depend solely upon the testimony of the subscribing witnesses. If their memory fail, so that they forget the attestation, or they be so wanting in integrity as wilfully to deny it, the will ought not to be lost, but its due execution and attestation should be found on other credible evidence. And so the law provides. *Bell v. Clark,* 31 N. C., 239; *Peck v. Cary,* 27 N. Y., 9, 84 Am. Dec., 220, and note.

Of course, we do not mean to say the supposed will was well attested— only that the evidence is sufficient to submit the question to the jury. The twelve may find either way. The credibility of the evidence is for them.

New trial.