IN THE MATTER OF THE WILL OF EMMETT J. KING, DECEASED

No. 856SC876

(Filed 6 May 1986)

**Wills § 22— codicil—mental capacity to execute—Rule 59 motion denied—no abuse of discretion**

The trial court did not abuse its discretion by denying appellants' motion under N.C.G.S. 1A-1, Rule 59, for a new trial in an action to contest the validity of a codicil to a will where the witnesses to the codicil and the beneficiary of the codicil testified that the testator knew what was going on and had sufficient mental capacity to execute the will; the jury was not obliged to accept the contradictory testimony of the testator's doctor, who did not see the testator at the crucial time; the terms of the codicil were consistent with the testator's expressed intent to give his interest in his business to a grandson who had been helping him in it; the fact that the testator received help in making his mark does not affect the validity of the instrument; whether the testator was too weak to resist his daughter was a question of fact for the jury; and the evidence that the testator made his mark on the will in the presence of witnesses indicates that the instrument was his and is sufficient to imply a request that they attest his signature. N.C.G.S. 31-3.3, N.C. Rules of App. Procedure, Rules 10(a), 10(b)(2).

APPEAL by Thomas J. King and Bradley A. Elliott, guardian *ad litem* for the children of Thomas J. King, from *Hobgood, Hamilton H., Judge.* Order entered 6 September 1984 in Superior Court, HALIFAX County. Heard in the Court of Appeals 15 January 1986.

Emmett J. King, who died on 9 August 1983, left a 4 page will and a 12 page related trust agreement, both executed on 12 February 1982. The will devised all of his estate, except the household property, to the trustee under the trust agreement. Subject to the trustee's discretionary powers in distributing to the testator's wife, children and grandchildren as need arose, the trust agreement, in substance, required the trustee to hold the trust property for the primary benefit of his wife while she lived, and at her death to divide the remainder equally between his living children and grandchildren. The testator was survived by his wife, three children and five grandchildren, one of whom is Jefferson Michael King Crowder. The testator also left the following codicil allegedly executed about an hour and a half before he expired:

August 9, 1983

This writing is a codicil to the will and trust agreement that I have with Planters National Bank and Trust Company concerning the disposition of my estate and the winding up of my business affairs.

I now abrogate and consider null and void the buy/sell agreement that pertains to Halifax Linen, Inc. It is my intention that Planters National Bank and Trust Company see that grandson, Jefferson Michael King Crowder inherit all of the stock that I own in Halifax Linen, Inc.

Jefferson Michael King Crowder is also to own the real property housing Halifax Linen, Inc., both the land and the buildings.

(sign)        X (His Mark)
              E. J. King

The jury found that both the will and codicil are valid and judgment was entered accordingly. Only the validity of the codicil is disputed by the appellants Thomas J. King, son of the testator, and his three children. The appellee is Jefferson Michael King Crowder, the only beneficiary of the codicil.

The appellee's evidence as to the execution of the codicil and the testator's mental capacity was to the following effect: Early on the morning of 9 August 1983 Mr. King was taken to the emer-

gency room at Halifax Memorial Hospital with a leaking ab-
dominal aneurysm. He was in pain and in shock from the loss of
blood and Dr. Richard Frazier, after giving him medications to
ease his pain and raise his blood pressure, had him moved to in-
tensive care, where he was placed on a respirator with an intra-
tracheal tube down his throat. Just after 1 o'clock that afternoon,
Patsy West and Rhoda Joyner were in the intensive care waiting
room when Jeff Crowder, who they had never seen before, en-
tered and asked them to witness the execution of the document
now in controversy. They went with Crowder to the testator's
room where Delores King, one of his daughters, asked them to
observe her father as she read the paper to him. They heard
Delores King read the codicil to her father, heard her ask him if
he understood it and if he wanted Jeff to have the business and
the property, and they saw Mr. King nod his head. They also
heard her say that he would have to help her, saw her place a pen
in his hand, heard her ask him to help, and saw her hold or guide
his hand as it made a cross mark on the signature line of the
codicil. The two ladies signed the document as witnesses and both
expressed the opinion that Mr. King was aware of their presence,
knew what was happening around him, and knew that he was ex-
ecuting a codicil to his will. Jeff Crowder was also present when
the codicil was executed. Ann King, testator's other daughter,
and Jeff Crowder testified that they talked with Mr. King at the
hospital off and on during that morning, and that he was able to
carry on a normal conversation. Ann King further testified that
the testator had spoken earlier of leaving his interest in Halifax
Linen to Jeff and she expressed the opinion that in executing the
codicil he knew what he was doing and its effect on his estate.

The appellants' evidence consisted of the testimony of Dr.
Frazier to the following effect: Mr. King was in a mild state of
shock and in pain when he arrived at the hospital and when Dem-
erol did not control his pain morphine was administered in-
travenously just before 1 o'clock; at the same time he was also
given Valium, a sedative, to make him more comfortable with the
respirator tube. Both morphine and Valium tend to decrease the
mental awareness of the recipient and during the morning Mr.
King lapsed into a semi-coma; though occasionally stuporous he
could respond to stimuli and be temporarily aroused. When the
doctor left for lunch at approximately 12:50 p.m., King was in a

semi-coma and was in a full coma when he returned to King's bed-side at 2:15 p.m. In his professional opinion, as a medical expert, Mr. King was incapable of knowingly executing a document at the time involved.

*Knox and Kornegay, by Robert D. Kornegay, Jr., for appellant Thomas J. King.*

*Moseley and Elliott, by Bradley A. Elliott, guardian ad litem for David King, Steven King, and Missy King, grandchildren of Emmett J. King and children of Thomas J. King.*

*Thomas I. Benton for appellee Jefferson Michael King Crowder.*

PHILLIPS, Judge.

Two of the questions posed in appellants' brief cannot be considered because they were not raised in the trial court as required by Rule 10(a) of the N.C. Rules of Appellate Procedure. Appellate courts are courts of errors, and it is fundamental that an action not challenged as erroneous at trial may not be contested on appeal. The first question concerns the propriety of the court receiving testimony that the testator and the other co-owner of Halifax Linen, Inc. had executed a buy-sell agreement; but this testimony was not objected to by the appellants, who thereby waived their right to contest its admissibility. *State v. Lucas*, 302 N.C. 342, 275 S.E. 2d 433 (1981). Furthermore, though the terms of the agreement are not recorded the testimony may have benefited the appellants since it suggests that the testator may have been obligated to sell his interest in the linen business to his co-owner and thus did not have the right to devise it to the appellee or anyone else. The second question concerns the court's instruction to the jury about evaluating Dr. Frazier's expert opinion as to Mr. King's mental condition when the codicil was allegedly executed; but appellants did not object to the instruction before the jury retired, though given the opportunity to do so. Rule 10(b)(2), N.C. Rules of Appellate Procedure.

Following the trial the appellants made several motions, none of which were timely, however, except a motion for a new trial under the provisions of Rule 59, N.C. Rules of Civil Procedure. Since Rule 59 motions are addressed to the sound discretion of

the trial court, *Worthington v. Bynum*, 305 N.C. 478, 290 S.E. 2d 599 (1982), the only question before us is whether the trial court abused its discretion in denying the motion. No abuse appears. Appellants' main argument is that the evidence does not show that the codicil was executed in the manner that the law requires. A codicil must be executed with the same formalities as attend the execution of a will. *Paul v. Davenport*, 217 N.C. 154, 7 S.E. 2d 352 (1940). Those formalities, set out in G.S. 31-3.3, are as follows:

> (a) An attested written will is a written will signed by the testator and attested by at least two competent witnesses as provided by this section.

> (b) The testator must, with intent to sign the will, do so by signing the will himself or by having someone else in the testator's presence and at his direction sign the testator's name thereon.

> (c) The testator must signify to the attesting witnesses that the instrument is his instrument by signing it in their presence or by acknowledging to them his signature previously affixed thereto, either of which may be done before the attesting witnesses separately.

> (d) The attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other.

Appellants contend that because of his illness and the medications received that the testator could not have had the mental awareness that is necessary for the execution of a testamentary document; and they argue at considerable length, mostly upon the premise that Mr. King did not know what was going on, that there was no evidence, express or implied, that the testator intentionally signed the codicil, that he signified to the attesting witnesses that the instrument was his, or that the codicil was signed by the attesting witnesses in his presence. These arguments will not be discussed in detail as a Rule 59 motion for a new trial is no substitute for timely motions for a directed verdict and judgment notwithstanding the verdict. *Worthington v. Bynum, supra.*

Nevertheless, a review of the record leads us to conclude that though the evidence as to the testator's mental capacity and

awareness might fairly be regarded as weak, it was sufficient to support the verdict and its weight was for the jury. *In re Will of Knowles*, 11 N.C. App. 155, 180 S.E. 2d 394 (1971). The witnesses to the codicil and Jeff Crowder testified that he did know what was going on and had sufficient mental capacity, in their opinion, to execute the will. *In re Will of Cauble*, 272 N.C. 706, 158 S.E. 2d 796 (1968). While Dr. Frazier may have been better qualified than the lay witnesses to testify as to the testator's mental awareness and capacity, the jury was not obliged to accept his testimony over theirs and he did not see the testator at the time crucial to this case, as they did. Too, the terms of the codicil were consistent with the intention, expressed several times according to the testimony, to give his interest in the linen business to his grandson that had been helping him in it. That the testator received physical assistance in making his mark does not affect the validity of the instrument, *In re Knowles, supra,* and whether he was too weak to resist his daughter's actions, as appellants contend, was another question of fact for the jury. The evidence that he made his mark on the codicil in the presence of the witnesses indicates that the instrument was his, G.S. 31-3.3(c), and is sufficient to imply a request that they attest his signature. *In re Will of Kelly*, 206 N.C. 551, 174 S.E. 453 (1934). In short the evidence before the jury tended to show, as they found, that the codicil was executed in accordance with all the requirements of our law and we cannot say that the learned trial judge, who heard the testimony and observed the demeanor of the witnesses, abused his discretion in letting the verdict and the judgment entered thereon stand.

No error.

Chief Judge HEDRICK and Judge JOHNSON concur.