IN THE MATTER OF THE WILL OF MARION L. PRIDDY, Deceased

No. COA04-1330

(Filed 5 July 2005)

**1. Wills— testamentary capacity—issue of fact**

There were genuine issues of material fact as to whether the caveator to a will had shown that the essential element of testamentary capacity did not exist, and summary judgment should not have been granted for the propounder.

**2. Wills— undue influence—summary judgment**

The trial court erroneously granted summary judgment for propounder on the issue of whether a testator was under undue influence of propounder at the execution of the will.

**3. Wills— witnesses—summary judgment**

The trial court erroneously granted summary judgment for propounder on the issue of compliance with the requirements for witnessing a will where issues of material fact existed as to whether the notary qualified as a witness and whether a witness signed in the presence of the testator and at his request.

Appeal by Caveator from orders entered 4 August 2004 and 24 August 2004 by Judge Lindsay R. Davis, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 20 April 2005.

**IN RE WILL OF PRIDDY**

[171 N.C. App. 395 (2005)]

*Hahn & Chastain, P.A., by Charles B. Hahn, for caveator-appellant.*

*Forman Rossabi Black, P.A., by T. Keith Black, Theodora Vaporis, and Jason M. Goins, for propounder-appellees.*

HUNTER, Judge.

Vickie L. Dixon ("Caveator") appeals from summary judgment orders entered on 4 August 2004 and 24 August 2004 in favor of Susan L. Priddy ("Propounder"). The issues before the Court are whether the trial court's entry of summary judgments for the Propounder were proper on the issues of (I) whether decedent had the capacity to execute a will, (II) whether decedent was under the undue influence of Propounder when the will was executed, and (III) whether there was compliance with the formalities required by law for executing a will. For the reasons discussed herein, we reverse on all issues.

On 8 June 2003, Marion L. Priddy ("Testator") died at the age of 71 years in Guilford County, North Carolina. At the time of his death, Testator was survived by his four children, including his daughter, Caveator, and his wife, Propounder. On 11 June 2003, Propounder presented to the clerk of superior court a paper-writing, purporting to be Testator's Last Will and Testament ("Will"). Rosemary Cummo ("Cummo") and Dorthea Tinnen ("Tinnen") each submitted an "Affidavit of Subscribing Witnesses for Probate of Will," stating that they had signed the paper-writing at the request and in the presence of Testator as an attesting witness. The clerk of court admitted the paper-writing to probate in common form.

On 21 August 2003, Caveator filed a Caveat, asserting that Testator did not possess the capacity to execute a will, and that the 2002 paper-writing was obtained through undue influence by his estranged wife, Propounder. Propounder filed a Motion for Summary Judgment in the caveat proceedings on 15 July 2004. The trial court, finding there were no genuine issues of material fact, granted Propounder's motions and the caveat proceedings were dismissed.

I.

The standard of review on appeal for summary judgment is whether there is any "genuine issue as to any material fact" and whether the moving party is entitled to a "judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003); *In re Will of Campbell*, 155 N.C. App. 441, 450, 573 S.E.2d 550, 557 (2002). In ruling on a

IN RE WILL OF PRIDDY

[171 N.C. App. 395 (2005)]

motion for summary judgment, the court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits[.]" N.C. Gen. Stat. § 1A-1, Rule 56(c); *In re Will of McCauley*, 356 N.C. 91, 100, 565 S.E.2d 88, 95 (2002). All such evidence must be considered in the light most favorable to the nonmoving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

" 'The purpose of a caveat [proceeding] is to determine whether the paper-writing purporting to be a will is in fact the last will and testament of the person for whom it is propounded.' " *Campbell*, 155 N.C. App. at 451, 573 S.E.2d at 558 (citation omitted). "While it is true that the issue of *devisavit vel non* (a determination of whether the will is valid) must be tried by a jury," summary judgment as to other issues, such as undue influence and capacity, may be granted. *Id.* at 450, 573 S.E.2d at 558.

[1] In her first assignment of error, Caveator contends the trial court erroneously granted a summary judgment motion in favor of Propounder on the issue of whether Testator had the capacity to execute a will. We agree.

" 'A testator has testamentary capacity if he comprehends the natural objects of his bounty; understands the kind, nature and extent of his property; knows the manner in which he desires his act to take effect; and realizes the effect his act will have upon his estate.' " *In re Estate of Whitaker*, 144 N.C. App. 295, 298, 547 S.E.2d 853, 856 (2001) (citations omitted). " 'The law presumes that a testator possessed testamentary capacity, and those who allege otherwise have the burden of proving by the preponderance or greater weight of the evidence that he lacked such capacity.' " *In re Will of Jarvis*, 334 N.C. 140, 146, 430 S.E.2d 922, 925 (1993) (citation omitted). However, to establish testamentary incapacity, a caveator need only show that one of the essential elements of testamentary capacity is lacking. *In re Will of Kemp*, 234 N.C. 495, 499, 67 S.E.2d 672, 675 (1951). "It is not sufficient for a caveator to present 'only general testimony concerning testator's deteriorating physical health and mental confusion in the months preceding the execution of the will, upon which [a caveator] based [her] opinion[] as to [the testator's] mental capacity.' " *In re Will of Smith*, 158 N.C. App. 722, 725, 582 S.E.2d 356, 359 (2003) (citation omitted). A caveator needs to present specific evidence " ' "relating to testator's understanding of his property, to whom he wished to give it, and the effect of his act in making a will at the time the will was made." ' " *Id.* (citations omitted).

Here, the evidence tends to show that Testator devised his entire estate to his estranged wife, Propounder, and did not provide for any of his four surviving children. Additionally, Caveator's evidence shows that Testator and Propounder had separated in 1999, when Testator moved to North Carolina. Propounder remained in their home in Charleston, South Carolina. Testator and Propounder continued to live separate and apart until the time of Testator's death. Testator eventually came to live with his daughter, Caveator, where she cared for him until his death.

The evidence tends to show that Testator suffered from ischemic cardiomyopathy, kidney disease, and depression. There is evidence that Testator, who was 71, attempted to find work and shared concerns about his financial situation, although he had considerable assets. Caveator has presented an affidavit from one of the attesting witnesses, Benjamin Butler ("Butler"), stating:

> Even though I signed the "will" as my friend requested, I did not then and I do not believe now that he was competent and aware enough to sign such a document. At the time, he was under considerable distress, stress, anxiety, and fear. I don't believe he was fully in touch with reality, nor was he acting under his own free, aware and conscious will.

Butler also noted that Testator was "showing increasingly erratic and irrational behavior" and "taking a considerable amount of medication." Additionally, an affidavit from Testator's friend, Fran Cuthbertson ("Cuthbertson"), stated that Testator had told Cuthbertson that Testator wished to leave everything to his daughter, Caveator.

Considering the evidence in the light most favorable to the non-moving party, Caveator, there are genuine issues of material fact as to whether Testator understood the effect of his actions. Because there are genuine issues of material fact as to whether Caveator has shown that an essential element of testamentary capacity did not exist, we hold that it was error for the trial court to grant Propounder's motion for summary judgment as to testator's capacity to execute a will.

## II.

[2] In her second assignment of error, Caveator contends the trial court erroneously granted summary judgment in favor of Propounder on the issue of whether Testator was under undue influence at the execution of the Will. We agree.

**IN RE WILL OF PRIDDY**

[171 N.C. App. 395 (2005)]

"The four general elements of undue influence are: (1) decedent is subject to influence, (2) beneficiary has an opportunity to exert influence, (3) beneficiary has a disposition to exert influence, and (4) the resulting will indicates undue influence." *Smith*, 158 N.C. App. at 726, 582 S.E.2d at 359. " 'The influence necessary to nullify a testamentary instrument is the " 'fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result.' " ' " *Id.* (citations omitted).

The North Carolina Supreme Court has identified several relevant factors as to the issue of undue influence:

" '1. Old age and physical and mental weakness.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see him.

4. That the will is different from and revokes a prior will.

5. That [the will] is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of his bounty.

7. That the beneficiary has procured its execution.' "

*In re Andrews*, 299 N.C. 52, 55, 261 S.E.2d 198, 200 (1980) (citation omitted); *Smith*, 158 N.C. App. at 726-27, 582 S.E.2d at 359-60. "Whether these or other factors exist and whether executor unduly influenced decedent in the execution of the Will are material questions of fact." *Smith*, 158 N.C. App. at 727, 582 S.E.2d at 360.

Caveator's evidence tends to show that Testator was 71 years old, suffered from kidney disease, heart disease, and depression. Caveator contends that although Propounder did not live with Testator for several years, she was in contact by phone, purportedly had the Will prepared and drafted for him, and dominated his financial affairs. Caveator argues that due to Testator's disposition of property to his estranged wife, Propounder, he disinherited his children, including Caveator, despite stating that he wanted to leave his estate to Caveator, who cared for him until his death. Affidavits from Cuthbertson and Caveator both stated that Testator was frightened of Propounder, dominated and controlled by her, and submissive to her demands.

Because there are genuine issues of material fact as to whether the *Andrews* factors exist, we hold that it was error for the trial court to grant Propounder's motion for summary judgment as to whether Testator was under the undue influence of Propounder.

## III.

**[3]** In her final assignment of error, Caveator contends the trial court erroneously granted summary judgment in favor of Propounder on the issue of whether there was compliance with the formalities required by law for executing a will. We agree.

For a will to be valid, it must comply with the statutory requirements. N.C. Gen. Stat. § 31-3.1 (2003). Propounder has the initial burden of proof and must show that the paper-writing in question was executed with the proper formalities required by N.C. Gen. Stat. § 31-3.1. *In re Will of Roberts*, 251 N.C. 708, 715, 112 S.E.2d 505, 509 (1960); *In re Will of Parker*, 76 N.C. App. 594, 597, 334 S.E.2d 97, 99 (1985). N.C. Gen. Stat. § 31-3.3 states:

> (a) An attested written will is a written will signed by the testator and attested by at least two competent witnesses as provided by this section.

> (b) The testator must, with intent to sign the will, do so by signing the will himself or by having someone else in the testator's presence and at his direction sign the testator's name thereon.

> (c) The testator must signify to the attesting witnesses that the instrument is his instrument by signing it in their presence or by acknowledging to them his signature previously affixed thereto, either of which may be done before the attesting witnesses separately.

> (d) The attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other.

N.C. Gen. Stat. § 31-3.3 (2003).

In this case, Caveator's evidence tends to show that on 30 August 2002, Testator executed his Will at Wachovia Bank in Greensboro. Upon arriving at the bank, Testator and his friend, Butler, met with bank employee, Cummo, to have Testator's Will signed and notarized. According to Butler's affidavit, Testator asked Cummo to notarize his Will and she agreed. While in Cummo's office, Testator signed the Will in the presence of Butler and Cummo. Butler next signed the Will as

an attesting witness at Testator's request. Cummo then took the Will and left, leaving both Testator and Butler alone in her office for about five to eight minutes, before returning with the Will, which then bore the signature of Tinnen, one of the bank's tellers. Cummo proceeded to notarize the Will, and Testator and Bulter left the bank.

Here, a material issue of fact exists as to whether Testator complied with the will formalities required by N.C. Gen. Stat. § 31-3.3. Although Propounder presented self-proving affidavits along with a notarized and signed Will, Caveator presents evidence that Testator did not sign the Will in Tinnen's presence or acknowledge his signature to Tinnen. Further, Caveator's evidence suggests Tinnen did not sign in the presence of Testator. Therefore, a material issue of fact exists as to whether Tinnen is a competent witness as defined by N.C. Gen. Stat. § 31-3.3(c)-(d).

Propounder contends, however, that even if Tinnen is not a competent witness, Cummo, the notary, is a second competent witness to the Will, and therefore the statute was properly complied with.

A testator " 'need not formally request the witness to attest his will as the request may be implied from his acts and from the circumstances attending the execution of the will.' " *In re Will of Kelly*, 206 N.C. 551, 553, 174 S.E. 453, 454 (1934) (citations omitted). " '[A] request will be implied from the testator's asking that the witness be summoned to attest the will, or by his acquiescence in a request by another that the will be signed by the witness.' " *Id.* (citations omitted). "Whether the testator impliedly requested the witnesses attest the will is ordinarily a factual question for the jury." *Brickhouse v. Brickhouse*, 104 N.C. App. 69, 73, 407 S.E.2d 607, 610 (1991) (hereinafter "*Brickhouse I*").

In *Brickhouse I*, this Court held that it was error for the trial court to grant a summary judgment motion, because there remained a factual issue as to whether the notary qualified as an attesting witness. *Id.* at 74, 407 S.E.2d at 610. This Court remanded the case for determination of whether the notary qualified as an attesting witness. *Id.* at 74, 407 S.E.2d at 611.

In *Brickhouse v. Brickhouse*, 110 N.C. App. 560, 430 S.E.2d 446 (1993) (hereinafter "*Brickhouse II*"), this Court found that there was sufficient evidence to affirm the trial court's factual determination that the notary was an attesting witness. *Brickhouse II*, 110 N.C. App. at 568, 430 S.E.2d at 450. Additionally, this Court affirmed that a

**IN RE WILL OF PRIDDY**

[171 N.C. App. 395 (2005)]

notary's signature, although signed in a separate place from the other witnesses, does not preclude the notary from being considered an attesting witness, if the testator requested that the notary attest his signature. *Id.* at 567, 430 S.E.2d at 450.

Here, Cummo signed an "Affidavit of Subscribing Witnesses for Probate of Will," asserting that she had signed, in the presence of Testator and at his request, the paper-writing as an attesting witness. Propounder asserts that Cummo was asked to witness the Will's execution, in addition to notarizing the document.

Caveator, however, presented evidence that Testator never expressly requested that Cummo attest the Will. As in *Brickhouse I,* there is a factual discrepancy as to whether Testator implicitly requested Cummo witness the document or merely notarize it and therefore, summary judgment was improperly granted.

Because there are genuine issues of material fact and *devisavit vel non* must be tried by a jury, we hold that it was error for the trial court to grant Propounder's motion for summary judgment, as there remained the factual issue of whether Cummo qualified as an attesting witness and whether Tinnen signed in the presence of Testator and at his request.

As issues of material fact existed, the trial court's entry of summary judgments for Propounder were improper on (I) whether testator had the capacity to execute a will, (II) whether testator was under the undue influence of Propounder when the Will was executed, and (III) whether there was compliance with the formalities required by law for executing a will. Therefore, we reverse the trial court's grant of summary judgment.

Reversed.

Judges HUDSON and GEER concur.