Denver Prop. Partners, LLC v. Sisson, 2020 NCBC 51.

STATE OF NORTH CAROLINA

LINCOLN COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 725

DENVER PROPERTY PARTNERS,
LLC; and BAYPORT HOLDINGS,
INC. d/b/a DENVER DEFENSE
RANGE & FIREARMS,

Plaintiffs,

v.

BRIAN P. SISSON; LAKE NORMAN
SPORTING ARMS AND RANGE,
INC. d/b/a THE RANGE AT LAKE
NORMAN, d/b/a THE RANGE AT
BALLANTYNE, d/b/a PINEVILLE
GUN SHOP; and THE RANGE AT
DENVER, INC.,

Defendants.

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
JUDGMENT NOTWITHSTANDING
THE VERDICT (JNOV) AND
MOTION FOR NEW TRIAL**

1.    **THIS MATTER** is before the Court on Plaintiffs' Motion for Judgment Notwithstanding the Verdict (JNOV) and Motion for New Trial (the "Motion") filed by Plaintiff[1] Bayport Holdings, Inc. d/b/a Denver Defense Range & Firearms ("Plaintiff") on May 3, 2020.  (ECF No. 89).  After a five-day trial beginning on January 13, 2020 and concluding on January 17, 2020, the jury found, in relevant part, that Defendant Brian P. Sisson ("Sisson") did not breach a fiduciary duty owed to Plaintiff.  (*See* Verdict Sheet Issue No. 7, ECF No. 76 ["Verdict Sheet"].)  Upon the jury's findings, and after further briefing from the parties on issues not relevant to the instant Motion, the Court entered its Final Order and Judgment on April 23,

---

[1] Summary Judgment against Denver Property Partners, LLC's claim for breach of contract was entered by the Court on April 1, 2019, (ECF No. 42), and therefore there were no remaining claims to submit to the jury as to this plaintiff; accordingly, there was no judgment entered for or against Denver Property Partners, LLC and the Court construes this Motion as being brought only by Bayport Holdings, Inc.

2020. (ECF No. 88.) Pursuant to Rules 50 and 59 of the North Carolina Rules of Civil Procedure ("Rule(s)"), Plaintiff now seeks judgment notwithstanding the jury's verdict ("JNOV") as to Plaintiff's breach of fiduciary duty claim, or, alternatively, for a new trial on this claim. For the reasons set forth below, the Court **DENIES** the Motion.

> *Elliott Law Firm, PC, by Michael Elliott, and The Wallace Law Firm, by Stephen F. Wallace, for Plaintiff Bayport Holdings, Inc.*

> *Sisson Law Firm, PLLC, by Kevin M. Sisson, and The McIntosh Law Firm P.C., by Christopher P. Gelwicks, for Defendants Brian P. Sisson and Lake Norman Sporting Arms and Range, Inc.*

Robinson, Judge.

## I. BACKGROUND

2. The Court's Final Order and Judgment describes the parties' respective allegations and claims for relief. *See Denver Prop. Partners, LLC v. Sisson*, 2020 NCBC LEXIS 54 (N.C. Super. Ct. Apr. 23, 2020). Here, the Court sets forth only that procedural background, trial testimony, and other evidence relevant to the Court's consideration of the Motion.

3. This case came on for trial before a jury duly empaneled on Monday, January 13, 2020 in the Superior Court of Lincoln County. The evidence submitted to the jury showed that Plaintiff and Sisson were both owners of respective gun ranges in the Denver, North Carolina area. Sisson also owned a gun range in South Carolina, The Range at Ballantyne. Plaintiff and Sisson were in negotiation over Sisson purchasing Plaintiff's business, Denver Defense Range & Firearms ("Denver Defense"). Plaintiff and Sisson entered into a Management Agreement, whereby

Sisson agreed to come into Denver Defense as manager of the business with potential plans of purchasing the business by separate agreement. At all times relevant, Sisson was also operating his own gun ranges, Lake Norman Sporting Arms and Range, Inc. ("LNSAR") and The Range at Ballantyne.

4. A number of stipulations were read to the jury by the Court. The parties stipulated to the fact that Sisson used his existing bank account for LNSAR for all of Denver Defense's revenue, inventory acquisitions, and business expenses. (*See* Final Pre-Trial Order, § E. Stipulation of Facts, No. 9.) The parties further stipulated that Sisson used his existing bank account for LNSAR to also pay for Denver Defense's employees' wages and used LNSAR's credit card processing account to process Denver Defense's revenue. (*See* Final Pre-Trial Order, § E. Stipulation of Facts, Nos. 11–12.)

5. After the close of Plaintiff's evidence, Defendants orally moved for directed verdict in their favor. The Court denied this motion. After the close of all evidence on Thursday, January 16, 2020, the Court inquired whether Plaintiff had a motion. At that point, Plaintiff moved for directed verdict in its favor. The Court asked counsel for Plaintiff on which claims Plaintiff was moving for a directed verdict. Counsel for Plaintiff stated in response that Plaintiff was moving on several claims, including its claim for breach of fiduciary duty. The Court then took a brief recess based upon a request from Plaintiff's counsel. When Court resumed, the exchange between Plaintiff's counsel and the Court was as follows:

MR. WALLACE [Plaintiff's counsel]: Your Honor, we'll withdraw our motion for directed verdict, and we'll work on theirs.

THE COURT: All right, sir. So you are not making a motion for directed verdict on any of the defendants' claims?

MR. WALLACE: No, Your Honor.

THE COURT: Okay, All right. Notwithstanding that – Notwithstanding that fact, it is my understanding that the law of North Carolina permits the presiding judge to grant or to – a directed verdict or dismiss a claim and not submit it to the jury where there is no evidence to justify submission of an issue to the jury, and so I must ask the defendants on what basis the Court could properly submit a breach of fiduciary duty or constructive fraud claim to the jury on behalf of one or more of the defendants.

6.     The Court and Defendants' counsel then proceeded to discuss the evidence submitted to the jury regarding Defendants' counterclaim for breach of fiduciary duty. After this exchange, the Court asked Plaintiff's counsel whether there was anything further for Plaintiff, and Plaintiff's counsel replied, "I don't think we've got anything." The Court then stated that it would submit all issues to the jury "to allow them to pass on all remaining claims in the case."

7.     On January 17, 2020, the jury returned its verdict on the issues of liability and damages for both Plaintiff's claims and Defendants' counterclaims. (*See* Verdict Sheet.) In relevant part, the jury found that Sisson owed Plaintiff a fiduciary duty. (Verdict Sheet, Issue No. 6.) Issue No. 7 read as follows: "If your answer to Issue No. 6 is YES, did Defendant Brian P. Sisson breach a fiduciary duty owed to Plaintiff Bayport Holdings, Inc.?" The jury answered this question "NO." (Verdict Sheet, Issue No. 7.) Issue No. 35 asked whether Sisson took "advantage of a position of trust and confidence" by taking specific enumerated actions. In response, the jury found that Sisson did "take advantage of a position of trust and confidence" with

Plaintiff by taking hard copies or an electronically stored version of Plaintiff's customer list, (Verdict Sheet, Issue No. 35.a.); by operating Denver Defense under LNSAR's bank account, (Verdict Sheet, Issue No. 35.c.); and by commingling Plaintiff's operating finances with LNSAR's funds, (Verdict Sheet, Issue No. 35.e.). For these actions, the jury awarded nominal damages of one dollar ($1.00).

8. Following entry of the Court's Final Order and Judgment, Plaintiff brought the instant Motion, arguing that, in light of the stipulations read into the record, the evidence presented, and the jury's answer to Issue No. 6, the jury should have answered Issue No. 7 "YES." Plaintiff argues that the jury's failure to do so was "contrary to the evidence presented at the trial." (Pls.' Mot. for JNOV & Mot. for New Trial 1, ECF No. 89 ["Mot."].) Plaintiff contends that this fact is sufficient for the Court to enter JNOV on Plaintiff's breach of fiduciary duty claim against Sisson. (Mot. 1.) Alternatively, Plaintiff moves the Court for a new trial pursuant to Rule 59 on the grounds of manifest disregard by the jury of the instructions of the Court or for any other reason recognized by our courts as grounds for ordering a new trial.

9. Defendants oppose the Motion, arguing that Plaintiff's withdrawal of its motion for directed verdict negates its ability to bring a JNOV motion now; that regardless, Plaintiff's withdrawn motion for directed verdict would not have been sufficient because it did not state the specific grounds upon which Plaintiff was moving for directed verdict; and that the jury's verdict is not inherently inconsistent to support ordering a new trial.

10.    Following full briefing on the Motion, the Court conducted a hearing at which counsel for the parties argued their respective positions.  The Motion is now ripe for determination.

## II.    ANALYSIS

11.    The Court first addresses Plaintiff's JNOV motion and then Plaintiff's motion for new trial.

### A.    **JNOV**

12.    The threshold question before the Court is whether Plaintiff properly preserved the issue presented in its Motion in order for the Court to consider JNOV. Upon a review of the record, the Court concludes that Plaintiff did not.

13.    Rule 50(b) provides,

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the submission of the action to the jury shall be deemed to be subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict[.]

14.    Accordingly, "a motion for judgment notwithstanding the verdict is technically a renewal of the motion for a directed verdict," *Harvey v. Norfolk S. R. Co.*, 60 N.C. App. 554, 556, 299 S.E.2d 664, 666 (1983), and the bringing of a motion for directed verdict is a necessary precursor to the later bringing of a motion for JNOV, *Garrison v. Garrison*, 87 N.C. App. 591, 595–96, 361 S.E.2d 921, 924 (1987).

15.    Here, Plaintiff stated, and then withdrew, its motion for directed verdict entirely.  While originally, Plaintiff identified that it was moving for directed verdict on its breach of fiduciary duty claim, Plaintiff's counsel later withdrew that motion

and therefore it was not considered by the Court. Plaintiff's withdrawal of its motion negated not only the Court's ability to rule on it, but also Defendants' ability to respond to it during the trial, which is, in part, the purpose for which a motion for directed verdict is a prerequisite to a motion for JNOV. *See id.* Rule 50(b) specifically states that only when a motion for directed verdict was "denied or for any reason is not granted[,]" can a motion for JNOV be brought. The Court did not have the opportunity to do either in this situation once Plaintiff withdrew its directed-verdict motion.

16. Plaintiff argues that the Court *sua sponte* moved for a directed verdict at the close of all evidence. The Court's review of the transcript, provided by Defendants as Exhibit A to their response brief, indicates that the Court *sua sponte* inquired of Defendants' counsel whether there was sufficient evidence to go to the jury on *Defendants' constructive fraud claim*, not on Plaintiff's breach of fiduciary duty claim. Accordingly, the Court finds this argument by Plaintiff unpersuasive.

17. Even if there were a basis upon which the Court could find that the issue presented in the Motion was preserved by an earlier motion for directed verdict, North Carolina law is clear that a motion for directed verdict must raise specific matters that would then be raised again on a motion for JNOV. *See Shaw v. Gee*, 2018 NCBC LEXIS 109, at *11 (N.C. Super. Ct. Oct. 19, 2018). Upon a review of the trial transcript, nothing in Plaintiff's oral motion for directed verdict, prior to it being withdrawn, identified any specific basis for which a directed verdict in Plaintiff's favor on its breach of fiduciary duty claim was appropriate.

18. For these reasons, the Court concludes that the Motion for JNOV must be DENIED.

### B. **Motion for New Trial**

19. Plaintiff alternatively moves for a new trial pursuant to Rule 59. Unlike a Rule 50 motion, "a motion for directed verdict is not a prerequisite[.]" *See id.* at *15 (citing *Garrison*, 87 N.C. App. at 595, 361 S.E.2d at 924). However, our Courts have noted that a motion for new trial pursuant to Rule 59 is not a substitute for a timely motion for directed verdict and JNOV. *See in re Will of King*, 80 N.C. App. 471, 475, 342 S.E.2d 394, 396 (1986). This is, in part, due to the fact that a JNOV motion is considered a question of law for the Court, whereas a motion for new trial is directed to the sound discretion of the trial judge. *See Penley v. Penley*, 314 N.C. 1, 9 n.1, 332 S.E.2d 51, 56 n.1 (1985).

20. Rule 59(a) provides that "[a] new trial may be granted to all or any of the parties on all or part of the issues" on several different grounds, including "manifest disregard by the jury of the instructions of the court[,]" "that the verdict is contrary to law[,]" or for any other reason later recognized by our Courts as grounds for a new trial. N.C.G.S. § 1A-1, Rule 59(a)(5), (7), (9).

21. The decision to grant a new trial is entirely within the trial court's discretion. However, this "discretion that 'must be used with great care and exceeding reluctance.'" *Shaw*, 2018 NCBC LEXIS 109, at *15 (quoting *In re Will of Buck*, 350 N.C. 621, 626, 516 S.E.2d 858, 861 (1999)). "It is well settled that a verdict should be liberally and favorably construed with a view of sustaining it, if possible . . . ." *Strum v. Greenville Timberline, LLC*, 186 N.C. App. 662, 665, 652 S.E.2d 307,

309 (2007) (quoting *Guy v. Gould*, 202 N.C. 727, 729, 164 S.E. 120, 121 (1932)). As the Honorable Gregory P. McGuire of this Court has recently reiterated,

> The trial judge has the discretionary power to set aside a verdict when, in his opinion, it would work injustice to let it stand; and, if no question of law or legal inference is involved in the motion, his action in so doing is not subject to review on appeal in the absence of a clear abuse of discretion.

*Chisum v. Campagna*, 2019 NCBC LEXIS 28, at *50 (N.C. Super. Ct. Apr. 25, 2019) (quoting *Seaman v. McQueen*, 51 N.C. App. 500, 505, 277 S.E.2d 118, 121 (1981)).

22. While there are several enumerated reasons that would warrant setting aside a verdict and ordering a new trial, the Court should only do so where upholding the verdict would result in a miscarriage of justice. *See Buck*, 350 N.C. at 628, 516 S.E.2d at 862; *see also Strum*, 186 N.C. App. at 666, 652 S.E.2d at 310 (finding that the trial court did not abuse its discretion in denying a Rule 59 motion for new trial even where the jury's verdict was inconsistent because the inconsistencies were surplusage).

23. Here, Plaintiff argues that the jury's failure to find that Sisson breached his fiduciary duty to Plaintiff in Issue No. 7 "can only be because of either (1) the Jury's manifest disregard of the instructions of the Court or (2) the Jury was confused by the instructions, and as a result of their misunderstanding and mistake, reached an incorrect finding." (Br. Supp. Mot. 5–6, ECF No. 90.) Plaintiff's arguments in support of either of these positions is lacking; however, the Court understands Plaintiff's position to be that, because the jury answered Issue No. 6 "YES", finding that Sisson owed a fiduciary duty to Plaintiff, and answered three of the subparts to Issue No. 35 "YES", which required a finding that Sisson "[took]

advantage of a position of trust and confidence" of Plaintiff, that the jury verdict sheet is inherently inconsistent, thus showing that the jury misunderstood the Court's instructions, and a new trial must be ordered.

24. Defendants argue that the jury verdict is not inherently inconsistent, and that, in fact, the jury's conclusion as to Issue No. 7 and Issue No. 35 show that the jury was paying close attention to both the stipulations read into the record and the Court's instructions. Defendants contend that by answering Issue No. 7 "NO", the jury found that while there was a fiduciary duty owed by Sisson to Plaintiff, and that Sisson did engage in some acts that took advantage of his position of trust and confidence with Plaintiff (as is evident from the jury's answer to Issue No. 35), the jury ultimately found that there was no harm to Plaintiff for those actions. Without any harm to Plaintiff, Defendants argue that there can be no breach of fiduciary duty and therefore it was entirely consistent for the jury to answer "NO" to Issue No. 7.

25. In addition to the arguments raised by counsel for the parties in their briefing on the Motion, the Court also reviewed again the instructions submitted to the jury and the evidence presented at trial (including the stipulations read into the record). After thorough consideration of this issue, the Court, in its discretion, concludes that the jury's verdict on Issue No. 7 is not inherently inconsistent with its answer to Issue No. 35 based on the circumstances of this trial. As noted above, on a Rule 59 motion, the Court must construe the verdict "liberally and favorably [ ] with a view of sustaining it, if possible." *Strum*, 186 N.C. App. at 665, 652 S.E.2d at 309.

26. While the Court understands that Issue No. 35 includes some language that is also used by our Courts to describe a breach of fiduciary duty claim, the jury, by both the evidence submitted to them and the stipulations read into the record, could properly answer subparts of Issue No. 35(a), (c), and (e) "YES." Notwithstanding such answers, Sisson's actions are not *per se* a breach of fiduciary duty. That is a factual determination left up to the jury, to which they concluded that these actions did not result in any harm to Plaintiff.

27. The Court believes a review of Issue No. 36, which asked the jury to award damages if it answered "YES" to any subpart of Issue No. 35, supports the consistency of the verdict sheet. The Court instructed the jury that if it found a technical violation of Issue No. 35, without proof of any actual damages, it was to award nominal damages in answering Issue No. 36. The jury awarding one dollar ($1.00) for damages associated with Sisson taking hard copies or electronically stored versions of Plaintiff's customer list, (Verdict Sheet, Issue No. 35.a.), operating Denver Defense under LNSAR's bank account, (Verdict Sheet, Issue No. 35.c.), and commingling Plaintiff's operating finances with LNSAR's funds, (Verdict Sheet, Issue No. 45.e.), represents a finding by the jury that no actual damages were proven.

28. Further, the Court believes that even if the jury verdict could be read to be inconsistent,[2] upholding the jury's verdict would not result in a miscarriage of justice. The jury awarded nominal damages in response to Issue No. 36, which

---

[2] To be clear, in the Court's opinion, a "possible" inconsistent verdict is insufficient to warrant setting aside a jury verdict and ordering a new trial.

relates to the conduct in Issue No. 35 that Plaintiff argues supports a finding of a breach of fiduciary duty. The jury's verdict supports a conclusion that Plaintiff failed to prove to the jury's satisfaction that it sustained actual damages as a proximate result of Sisson's conduct.

29.     Reading the jury verdict *in toto*, the Court believes the jury consistently found that Plaintiff did not prove any actual damages on any of its claims. Upon review of the evidence submitted to the jury, the Court does not believe that the jury's failure to find Plaintiff suffered actual damages is against the weight of the evidence. Plaintiff put on very limited evidence regarding actual damages it may have suffered for any of Defendants' conduct, and especially with regards to Sisson taking hard copies or electronically stored versions of Plaintiff's customer list, operating Denver Defense under LNSAR's bank account, and commingling Plaintiff's operating finances with LNSAR's funds. Plaintiff's sole evidence regarding actual damages it suffered stemmed from the alleged loss of value of the sale of the Denver Defense business. However, there was no expert testimony on the damages suffered regarding the loss of the business, nor does the loss of the sale of Denver Defense underpin any of the grounds upon which Plaintiff now seeks review of its breach of fiduciary duty claim.

30.     For these reasons, the Court concludes that this is not the exceptional situation in which upholding the jury's verdict will result in a miscarriage of justice. On the contrary, ordering a new trial—which would involve significant time and resources of both the parties and the Court—and giving Plaintiff a "second bite at the apple" to present evidence of actual damages when it failed to present such

evidence at the first trial, would be a miscarriage of justice.  For these reasons, the Motion seeking a new trial is DENIED.

### III.  CONCLUSION

31.  **THEREFORE,** the Court, in its discretion, **DENIES** the Motion in its entirety.  The Final Order and Judgment, as entered by the Court on April 23, 2020, (ECF No. 88), is **FINAL**.


**SO ORDERED**, this the 15th day of July, 2020.


/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases